THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
PAUL J. MISCICHOWSKI, Defendant-Appellant.

Second District No. 85—0240

Opinion filed May 14, 1986.

Charles W. Smith, of Rosing, Applehans & Smith, of Waukegan, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Peter M. Tumminaro, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCHNAKE delivered the opinion of the court:

On February 22, 1985, after a jury trial in the circuit court of Lake County, defendant, Paul J. Miscichowski, was found guilty of involuntary manslaughter and sentenced to 30 months' probation. On appeal defendant argues: (1) that he was not proved guilty beyond a reasonable doubt; (2) that the trial court erred in denying his motion in arrest of judgment; (3) that he was improperly convicted on an ac-

countability theory; and (4) that his verdict of guilty is legally inconsistent with his codefendant's verdict of not guilty.

Defendant was arrested on July 5, 1984, and charged with reckless conduct. On July 15, 1984, defendant was further charged with involuntary manslaughter. On July 19, 1984, defendant was indicted by the April term of the Lake County grand jury for involuntary manslaughter (count I) and reckless conduct (count II). Defendant's case was consolidated with that against Dale Salata on October 9, 1984, and by agreement of the parties, was set for trial with a separate jury to be impaneled for each defendant. On November 1, 1984, the August term of the Lake County grand jury returned two additional indictments against defendant charging aggravated assault (count III) and unlawful use of weapons (count IV). Trial commenced on November 6, 1984.

At trial the evidence showed that on the night of July 4, 1984, decedent, Anna Kriston, and two of her friends, Gundun Klomp and Eleanore Miniard, drove to an area known as the Commonwealth Edison Beach in Waukegan. When they arrived they pulled into a parking lot area which is contained within two fences, one to the north, and one to the south. On the north is a 30- to 40-foot-high hill on property belonging to Johns-Manville. Access to the hill may be gained by walking around the north fence near Lake Michigan because the fence does not extend to the water's edge. To the south is a Commonwealth Edison power plant. There is a turnstile to a fisherman's pier located on the south fence and the only artificial light in the area is located at the turnstile. Lake Michigan and the beach area are directly to the east.

Anna and her friends arrived at the beach area at approximately 11 p.m. and drove east through the parking lot. When they reached the middle of the lot, Anna, who was driving, slumped over into the front passenger seat where Klomp was sitting. It was later determined that Anna had been struck in the left side of her head by a .22-caliber bullet. The bullet fragmented into three pieces lodging in her brain and causing her death at 9:33 a.m. on July 5, 1984.

Eric Sinderman and two of his friends, Peter Karlovics and Richard Conley, arrived at the beach in a pickup truck at approximately 11:15 p.m. Upon arriving they observed an ambulance and two police cars, and turned around to leave. At this time they observed two individuals west of the turnstile of the south fence. All three men identified defendant and codefendant Salata as the individuals they saw near the south fence. Sinderman testified that defendant was carrying a bow and arrow and Salata was carrying a

rifle. Conley testified that defendant was the man carrying the rifle. Karlovics originally testified that defendant was carrying the bow but changed his testimony and said the defendant was carrying the rifle. Karlovics then changed his testimony a second time and stated that it was defendant carrying the bow and Salata carrying the rifle.

Salata asked for a ride to the end of the road at the top of the hill and Sinderman agreed. Salata and defendant then got into the back of the truck and Sinderman drove them to the entrance of the Amstutz Highway which was at the top of the hill, and told them he could take them no farther. Salata, however, insisted that they take them farther. Sinderman proceeded on the Amstutz Highway, but then pulled over onto the shoulder in the middle of the entrance ramp. He told the defendant to get out, but Salata replied, "No. Bullshit. Keep going, remember I've got the gun."

Sinderman then proceeded south on the Amstutz Highway. While on the Amstutz, Sinderman heard a faint shot, looked in the rear view mirror, and saw the glare of powder coming from the barrel of the rifle which Salata was holding at that time. Sinderman also recalled defendant sticking his hand through the window while they were on the Amstutz and handing a bullet to his friend Richard saying, "See, these are real bullets." Sinderman exited the Amstutz Highway at the Grand Avenue exit and dropped defendants off at Grand Avenue and Sheridan Road. Police later obtained a spent .22-caliber cartridge and a live .22-caliber round from the bed of the truck.

The evidence also showed that James Sutherland drove to the Commonwealth Edison beach on the night of July 4, 1984. While Sutherland testified on direct examination that he arrived at about 9:30 p.m., his testimony on cross-examination showed that he probably arrived no later than 8:30 p.m. Sutherland testified that when he arrived at the beach he drove east in the parking lot and heard what he thought was a rock strike the side or undercarriage of his van. The following evening, at approximately 8 p.m., Sutherland noticed what appeared to be a bullet hole in the left side of his van. Sutherland drove his van to the Waukegan police department where a .22-caliber bullet was recovered from the van.

Sergeant Leo Graham of the Waukegan police department arrived at the beach area at 5:30 a.m. on July 5, 1984, and observed a four-door gray sedan parked along the south fence near the turnstile. The gray vehicle was later identified as belonging to Salata's grandmother. Near the rear tire on the driver's side of the gray sedan, Graham found an empty .22-caliber cartridge shell and a live

.22-caliber round. Also, on July 5, 1984, Detective Bruce Repp of the Waukegan police department recovered a .22-caliber rifle and a compound bow from Salata's residence.

Robert Wilson, a firearm's identification expert and forensic scientist at the Northern Illinois Police Crime Lab testified that the .22-caliber shell casings found near the Salata automobile and in the bed of the Sinderman truck could have been fired only from the .22-caliber rifle found at the Salata residence. Further, the bullet recovered from the Sutherland van and the bullet fragment recovered from the decedent had the same class characteristics, six lands and grooves inclined to the right. Wilson admitted, however, that such class characteristics reflect the manner in which most .22-caliber weapons are made and that there could be over one million weapons in the world that could have fired the two recovered rounds. Wilson also testified that the composition of the fragment recovered from the decedent appeared to be lead with a lubaloy-type finish. The live .22-caliber round found next to the Salata vehicle at the beach was a .22-caliber, lubaloy, hollow-point, CCI-brand bullet.

I

■ Defendant's first argument is that he was not proved guilty beyond a reasonable doubt. He argues that the State's case failed to exclude every reasonable theory of innocence and failed to prove where he was when the victim was shot or the manner in which the fatal bullet was fired (*i.e.*, whether it was done in a reckless, deliberate or accidental manner).

The State does not dispute that its case against defendant rests on circumstantial evidence. When the evidence finding the defendant guilty is entirely circumstantial, the facts proved must be consistent with the defendant's guilt and inconsistent with any reasonable hypothesis of innocence. (*People v. Evans* (1981), 87 Ill. 2d 77, 83.) However, where the circumstantial evidence relied upon to support the defense that another committed the crime is unsatisfactory, based on mere surmise or possibility without evidence to support it, a hypothesis consistent with innocence may be rejected by the trier of fact. *People v. Despain* (1981), 102 Ill. App. 3d 1063, 1067.

■ Defendant contends that the State's evidence established that the Sutherland van was struck by a .22-caliber bullet, fired from the north, at approximately 8:30 p.m. Therefore, defendant argues, because the State's evidence also established that he could not have been in the beach area as early as 8:30 p.m., it is plausible that an unknown third party was also present that night firing a .22-caliber

weapon from the north in the area that the victim was shot. We do not agree.

Defendant's theory of innocence rests totally upon the assumption that the "rock" Sutherland thought he heard, was, in fact, the .22-caliber bullet that was later removed from the van. Sutherland's testimony, however, shows that he was driving on gravel at the time he thought he heard a rock bounce up and strike the side or undercarriage of his van. He also stated that he parked his van near the north fence facing east so that the left side of the van faced north the entire time he was at the beach until he left at approximately 11:15 p.m. We find defendant's theory of innocence is based upon mere surmise and possibility without evidence to support it. Sutherland's van could have been hit in the left side by a bullet fired from the north at any time prior to Sutherland's leaving at 11:15 p.m.

■ We also find that the State's evidence was sufficient to prove defendant's guilt beyond a reasonable doubt. The evidence showed that both he and Salata were present at the time and place of the fatal shooting and had in their possession a .22-caliber rifle and bullets of the type used to shoot the victim. Shortly after the shooting, defendant and Salata fled the scene by abandoning the car in which they had arrived and hitching a ride in a pickup truck. (*People v. Harris* (1972), 52 Ill. 2d 558, 561 (flight tends to show consciousness of guilt).) The jury heard testimony that the rifle was discharged at least twice at the beach (as shown by the second bullet obtained from the Sutherland van) and once while driving on the Amstutz Highway tends to show that the bullet that killed Anna Kriston was fired recklessly and was not an accidental discharge. Further, the State was not required to prove, as an element of involuntary manslaughter, that the bullet was not fired with the intent to kill her. *People v. Hoffer* (1984), 122 Ill. App. 3d 13, 19, *aff'd* (1985), 106 Ill. 2d 186, *cert. denied* (1985), 474 U.S. ___, 88 L. Ed. 2d 114, 106 S. Ct. 139. See also *People v. Frazier* (1984), 129 Ill. App. 3d 704, 709; *People v. Weeks* (1983), 115 Ill. App. 3d 524, 527.

■ Defendant also argues that the court erred in admitting into evidence the .22-caliber rifle found at Salata's residence. The test to determine the admissibility of a weapon is whether there is evidence to connect the weapon to the defendant and to the crime. (*People v. Gonzales* (1968), 40 Ill. 2d 233, 239; *People v. Jones* (1961), 22 Ill. 2d 592, 599.) Defendant contends that this test was not met because the State's evidence connected the rifle only to his codefendant Salata and not to him, and because the evidence did not show that the rifle fired the bullet that killed the decedent.

■ Defendant's first contention is incorrect as a matter of law. Where there is sufficient evidence to establish that at least one weapon was used in the commission of the offense and that defendant participated in the offense, the weapon may be admitted even though the evidence does not show that defendant himself wielded or possessed it. (*People v. McCasle* (1966), 35 Ill. 2d 552, 559.) Further, the evidence showed that defendant was in the area of the shooting with the rifle at the time of the shooting. It was not necessary to prove that the particular weapon was the one which was actually used before it could be introduced into evidence. 35 Ill. 2d 552, 559.

## II

■ Defendant's second argument is that the trial court erred in denying his motion in arrest of judgment. Defendant's argument is twofold. First, he contends that the State omitted from the indictment two essential elements of the offense of involuntary manslaughter: (a) that the killing was unintentional, and (b) that the killing was without legal justification. Second, defendant contends that the indictment of the April term of the grand jury for involuntary manslaughter was quashed by the indictment of the August grand jury on two additional charges.

As to defendant's first contention, we find that the indictment properly charged the offense of involuntary manslaughter. While it is true that by definition the offense of involuntary manslaughter occurs when one unintentionally kills another (Ill. Rev. Stat. 1983, ch. 38, par. 9—3(a)), it does not necessarily follow that lack of intent is a necessary element of the offense. (*People v. Hoffer* (1984), 122 Ill. App. 3d 13, 19, *aff'd* (1985), 106 Ill. 2d 186, *cert. denied* (1985), 474 U.S. ____, 88 L. Ed. 2d 114, 106 S. Ct. 139.) To the contrary, the only mental state required to sustain a conviction of involuntary manslaughter is recklessness. *People v. Hoffer* (1984), 122 Ill. App. 3d 13. See also *People v. Frazier* (1984), 129 Ill. App. 3d 704, 708; *People v. Weeks* (1983), 115 Ill. App. 3d 524, 527.) The indictment, therefore, did not have to state that the killing was unintentional.

■ Further, the words "without lawful justification" (Ill. Rev. Stat. 1983, ch. 38, par. 9—3(a)), are merely a reference to affirmative defenses defendant could impose once charged. (*People v. Williams* (1980), 80 Ill. App. 3d 963, 969.) Unless defendant presents some evidence of an affirmative defense, the State's proof is complete without evidence that the act was without lawful justification. (80 Ill. App. 3d 963, 969.) At the time the indictment was filed, no such element existed in the State's case; nor did defendant raise an

affirmative defense after indictment. Therefore, the indictment did not have to include, or be amended to include, that the killing was without legal justification. 80 Ill. App. 3d 963.

■■ As to defendant's second contention, we find that the second indictment of the August grand jury did not quash the prior April indictment which charged involuntary manslaughter. Contrary to defendant's position, a subsequent indictment does not automatically quash a prior indictment. (*United States v. Holm* (9th Cir. 1977), 550 F.2d 568; *United States v. Strewl* (2d Cir. 1938), 99 F.2d 474, *cert. denied* (1939), 306 U.S. 638, 83 L. Ed. 1039, 59 S. Ct. 489.) Defendant, therefore, was properly indicted for the offense of involuntary manslaughter. While defendant also argues that the second (August) indictment was improper because it sought to add charges without reindicting him on the original charges under the first indictment, that issue is not before the court since both charges under the second indictment were dismissed.

### III

■ Defendant's next argument is that he was improperly convicted of involuntary manslaughter on a theory of accountability. Defendant first asserts that under *People v. Mikel* (1979), 73 Ill. App. 3d 16, a person may not be guilty of involuntary manslaughter on an accountability theory. The State argues to the contrary relying on *People v. Bolden* (1978), 59 Ill. App. 3d 441.

Section 5—2(c) of the Criminal Code of 1961 states:

"A person is legally accountable for the conduct of another when:

\* \* \*

(c) Either before or during the commission of *an* offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 38, par. 5—2(c).)

In *Mikel*, the court held that the trial court had properly refused the defendant's involuntary manslaughter instruction because a person could not be guilty of involuntary manslaughter on an accountability theory. The court reasoned:

"However, section 5—2(c) requires that the one to be charged with accountability intends 'to promote or facilitate' the commission of *the* offense. Just as one cannot attempt murder without an intent to kill [citation], it would seem that one could not intend to 'promote or facilitate' the commission of a

homicide without intending that the victim be killed. As we have indicated, had defendant had that intent, he would have been guilty of murder." (Emphasis added.) (*People v. Mikel* (1979), 73 Ill. App. 3d 16, 19.)

In view of our supreme court's more recent opinion in *People v. Terry* (1984), 99 Ill. 2d 508, we believe *Mikel* was wrongly decided.

In *Terry*, the court held that under section 5—2(c), which incorporated the long established "common-design rule" (*People v. Terry* (1984), 99 Ill. 2d 508, 514), the State need only prove that the defendant had the specific intent to promote or facilitate *a* crime, and not the actual crime for which he was charged. Once the State proved that the defendant intended to promote or facilitate *a* crime, he was responsible for *any* criminal act done in furtherance of the intended crime. Thus, where the defendant intended to promote or facilitate only a battery, he was legally responsible for the act of his codefendant in stabbing and killing the victim. The defendant did not have to intend that the victim be killed. Applying *Terry* to the present case, we agree with the court's decision in *Bolden* and hold that a person can be guilty of involuntary manslaughter on an accountability theory because he does not have to intend that the victim be killed.

Defendant argues in the alternative that the State's evidence failed to prove beyond a reasonable doubt that he aided or abetted in the commission of a crime. Defendant contends that the State's evidence, at best, showed only that he was present at the scene. We hold to the contrary.

We note at the outset that the State argues that the evidence establish circumstantially that it was defendant who fired the fatal shot. However, two of the State's three witnesses testified that it was Salata who was carrying the rifle after the fatal shooting, and that it was Salata who fired the rifle from the bed of the pickup truck while traveling down the Amstutz Highway. Further, the rifle was found at Salata's residence the day after the shooting. We find, therefore, that the State failed to prove beyond a reasonable doubt that defendant actually fired the fatal bullet and defendant's conviction must rest on a theory of accountability.

To be accountable for the acts of another, one must have a specific intent to promote or facilitate the commission of a crime. (Ill. Rev. Stat. 1983, ch. 38, par. 5—2(c).) While mere presence at the scene or mere acquiescence in another's actions is ordinarily insufficient to establish accountability, one may be held to aid and abet without physically participating in the overt act. (*People v.*

*Young* (1983), 116 Ill. App. 3d 984; *People v. Watson* (1982), 106 Ill. App. 3d 315; *People v. Torres* (1981), 100 Ill. App. 3d 931.) If the evidence shows that defendant was present at the scene of the offense without disapproving or opposing it, the trier of fact may consider this conduct along with other circumstances in determining whether defendant assented to the commission of the offense and thereby aided and abetted the actor. (*People v. Young* (1983), 116 Ill. App. 3d 984; *People v. Watson* (1982) 106 Ill. App. 3d 315; *People v. Torres* (1981), 100 Ill. App. 3d 931.) Similarly, a close affiliation with the codefendant after the commission of the offense, and a failure to report the incident is relevant to establishing accountability. (*People v. Young* (1983), 116 Ill. App. 3d 984; *People v. Watson* (1982), 106 Ill. App. 3d 315; *People v. Torres* (1981), 100 Ill. App. 3d 931.) Defendant's flight from the scene may also be considered. *People v. Morris* (1977), 49 Ill. App. 3d 369.

 The evidence presented in the present case showed that defendant was with Salata at a party on the evening of the shooting, that he left the party with Salata and drove to the beach area, that he was with Salata shortly after the shooting, that he was also carrying a weapon at the beach, that this weapon was later found at Salata's residence, that defendant fled the scene with Salata, that defendant assisted in the escape by making an implied threat when he handed a bullet into the truck cab, stating, "See, these are real bullets," and that defendant failed to report the incident. This evidence was sufficient to support his conviction on a theory of accountability.

## IV

 Defendant's fourth argument is that his verdict of guilty on the charge of involuntary manslaughter is legally inconsistent with his codefendant's verdict of not guilty. He contends that since the only difference in evidence presented to the juries was Salata's incriminating statement to the police the day after the shooting, the verdicts must be considered inconsistent.

Ordinarily, the acquittal of one defendant does not in itself raise a reasonable doubt as to the guilt of a codefendant. (*People v. Stock* (1974), 56 Ill. 2d 461, 465.) For a reasonable doubt to be raised in such cases, it must be shown that the evidence given against all of the defendants is identical in all respects. (56 Ill. 2d 461, 465.) Defendant concedes that the evidence given against himself and Salata was not identical in all respects, but argues that under *People v. Perez* (1980), 82 Ill. App. 3d 1007, the rule in *Stock* can be applied

where the difference in evidence is slight. We find the difference in evidence here was not "slight."

In codefendant Salata's trial the jury heard testimony of Salata's statement to the police on the day after the shooting. This statement was both inculpatory and exculpatory. Salata admitted being at the beach area at the time of the shooting, and to having fired the rifle twice. Salata also stated, however, that both he and defendant fired the rifle, that he fired his two shots into the air across the parking lot, that he did not see where defendant fired the rifle, and that he did not believe that he had fired the shot that killed the girl.

In the Salata case, therefore, the jury heard evidence which, if believed, showed that Salata did not fire the fatal bullet. In defendant's case, however, while the State did not prove that defendant fired the fatal bullet, defendant did not present any affirmative proof that he did not fire it. Thus, while there is no doubt that the verdicts are inconsistent (Salata was guilty of involuntary manslaughter under a theory of accountability even if he did not fire the fatal bullet), the inconsistency may be explained by the jury's reluctance to convict of involuntary manslaughter someone they believe did not fire the fatal bullet. (*Cf. People v. Stock* (1974), 56 Ill. 2d 461, citing *People v. Stone* (1963), 213 Cal. App. 2d 260, 28 Cal. Rptr. 522.) Such an inconsistency based on the relationship shown to have existed between the defendants may be "inconsistent against the law," not against the defendant, and does not raise a reasonable doubt of innocence. *People v. Stock* (1974), 56 Ill. 2d 461; *People v. Stone* (1963), 213 Cal. App. 2d 260, 28 Cal. Rptr. 522.

For the reasons stated herein, the judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

LINDBERG and STROUSE, JJ., concur.