THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS EARL HOUSTON, Defendant-Appellant.

Fourth District    No. 4—93—0009

Opinion filed February 14, 1994.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant, Thomas Earl Houston, appeals from his conviction of murder, alleging he was improperly found guilty of the murder of Shelvin Johnson under an accountability theory (Ill. Rev. Stat. 1991, ch. 38, pars. 9—1(a), 5—2) and he was improperly convicted of five counts of murder with respect to the same victim. We affirm his conviction of first degree murder based on the intentional killing of Johnson and vacate the four cumulative convictions.

## I. FACTS

Shelvin Johnson and Martinez Gill were partners in a cocaine-selling operation. In April 1992, they had a falling out. On May 10, 1992, Johnson and Jimmie "Junior" Ross went to Gill's mobile home. Houston spotted Ross outside the mobile home and asked what he was doing there. Ross responded that he hoped to buy drugs. After Houston left, Johnson and Ross broke into Gill's mobile home and stole a television set, a camera, drugs, and some cash.

At approximately midnight, Houston and Willie "Prince" McClain went to the mobile home of Willie Dorsey, Johnson's uncle. Houston and McClain were looking for Johnson. Dorsey informed them Johnson was at the Green Apartments.

At approximately 2 a.m. on May 11, 1992, McClain met up with Sara Ellen Beatty Lambert. Lambert asked McClain whether he could get her some cocaine; McClain stated she would have to wait because he had to "find somebody." McClain instructed Lambert to drive him around Champaign in her car, which she did. McClain later explained Gill's trailer had been broken into and McClain was

searching for the culprit. Lambert picked up Gill and Houston. The group stopped at the Green Apartments approximately three times. On one occasion, McClain left the car and the sound of breaking glass could be heard. Upon returning to Lambert's car, McClain explained he had smashed the windows of Johnson's car.

At approximately 3:30 or 3:45 a.m., one of the passengers instructed Lambert to follow a tan Chevette. There were three passengers in the car, later identified as Johnson, Ross and Eunice Gwendolyn Penerman. As Lambert's car approached it, the Chevette came to a stop and a woman, later identified as Juvions "Michelle" Meeks Cooley Gillespie, approached the Chevette and began speaking with one of the passengers.

Lambert stopped her car next to the Chevette. She heard Mc-Clain say "give me the gun. Let me do it." Lambert believed McClain directed this request to Houston, but later acknowledged she was not certain. McClain, Gill and Houston all exited Lambert's car and approached the Chevette. Lambert saw both McClain and Gill fire the gun. Lambert heard Houston yell "something about somebody was running toward the field or toward the alley." She additionally testified "when the shooting was going on, I could hear talking and it seemed like they were worried about who was getting away, whether they thought they had not got somebody."

According to Lambert, after shots had been fired, Gill, McClain and Houston got back into her car. McClain fired a final shot into the Chevette. The men instructed Lambert to drive away. As she drove they requested her to increase her speed and disregard stop signs. Lambert drove to the apartment of McClain's girlfriend. At the apartment, McClain gave Houston the murder weapon and instructed him to hide it. Houston took the gun and disappeared around the corner of the building. After instructing Lambert not to tell anyone what had happened, McClain permitted her to go home.

Johnson and Penerman died as a result of the bullet wounds. Ross and Gillespie were treated and recovered. Several days after the shootings, Lambert turned herself in to the police and reported Mc-Clain, Gill and Houston had been involved in the shootings. The State agreed not to seek charges against Lambert with respect to her involvement in the incident and provided her with financial assistance for the purpose of relocation.

Houston was indicted by a grand jury of five counts of first degree murder of Johnson (counts XXIII through XXVII), five counts of first degree murder of Penerman, and one count of aggravated battery with a firearm of Gillespie.

At the trial, in addition to Lambert's account of the shooting,

detailed above, Ross and Gillespie also testified. Ross testified that while Johnson and Penerman were talking, he noticed Lambert's car. Ross saw Gill exit Lambert's car and approach the driver's side of the Chevette with a gun in his hand. Gill fired a shot through the driver's window. Ross exited the car through the passenger side. Johnson attempted to leave the same way, but was shot. Ross attempted to run away and was shot in the leg. He was shot from behind and did not know who had fired the shot. Ross was able to hide at a nearby residence.

Gillespie testified she was about to enter Johnson's car when a second car pulled up and Gill and McClain got out. Shots were fired and Gillespie hid behind a tree. After shooting the individuals in the car and chasing Ross, McClain spotted Gillespie behind the tree. McClain "just shook his head." Gill then spotted Gillespie and shot her three times. Gillespie "laid down and played dead."

A jury found defendant guilty of the five counts of first degree murder of Johnson, not guilty of the five counts of first degree murder of Penerman, and not guilty of the aggravated battery of Gillespie. The trial court entered a conviction on each of the five counts of first degree murder of Johnson.

## II. ANALYSIS

Houston alleges the evidence was not sufficient to support his conviction of the first degree murder of Johnson under an accountability theory. When presented with a challenge to the sufficiency of the evidence, we do not retry the defendant. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Hammond* (1991), 214 Ill. App. 3d 125, 133, 573 N.E.2d 325, 330.

An individual is legally accountable for the actions of another when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1991, ch. 38, par. 5—2(c).) As defendant correctly notes, accountability may not be established by his mere presence at the scene of a crime; nor may it be established by proof defendant had knowledge the crime was being committed. Rather, accountability must be established by a showing defendant (1) solicited, aided, abetted, agreed, or attempted the offense, (2) such participation in the offense took place before or during the offense, and (3) the defendant's participation was accompanied by a concurrent, specific intent to promote or facilitate

the commission of the offense. *Hammond*, 214 Ill. App. 3d at 134, 573 N.E.2d at 331.

■ There was sufficient evidence from which the jury could have concluded Houston aided and abetted the murder of Johnson. Although mere presence at the scene of the crime does not render an accused accountable, if the evidence shows the accused was present at the crime without disapproving or opposing it, the trier of fact may *infer* he assented to the commission of the crime and thereby aided and abetted it. (*People v. Johnson* (1991), 220 Ill. App. 3d 550, 554, 581 N.E.2d 118, 122, citing *People v. Reid* (1990), 136 Ill. 2d 27, 62, 554 N.E.2d 174, 190.) In addition to the accused's presence at the scene of the crime, without disassociating himself from the crime, other factors which raise inferences the accused aided in the commission of the crime include flight from the scene, continued association with the perpetrator after the criminal act, failure to report the incident, acceptance of illegal proceeds of the crime, and concealment or destruction of the evidence. *Johnson*, 220 Ill. App. 3d at 555, 581 N.E.2d at 122.

In *Johnson*, the defendant's conviction of robbery, under an accountability theory, was affirmed despite defendant's contention he did not aid or abet the crime. The evidence established defendant walked side by side with the perpetrator of the robbery and simultaneously stopped in front of the victim. Defendant was silent as the perpetrator demanded and pulled a gold chain from the victim's neck. Defendant and the perpetrator fled the scene together, defendant accepted the chain from the perpetrator, then, just prior to apprehension by the police, threw the chain into some bushes. (*Johnson*, 220 Ill. App. 3d at 555, 581 N.E.2d at 122-23.) Affirming his conviction, the appellate court found the evidence was more than ample to prove defendant guilty beyond a reasonable doubt. *Johnson*, 220 Ill. App. 3d at 556, 581 N.E.2d at 123.

Like the defendant in *Johnson*, Houston's conduct extended far beyond mere presence at the scene of the crime. After implicating Johnson and Ross in the theft of Gill's property, Houston accompanied Gill on a search for Johnson and Ross. He remained with them after McClain smashed the windows of Johnson's car. After hearing McClain say "give me the gun. Let me do it," Houston accompanied McClain and Gill to Johnson's car. No evidence was introduced indicating Houston attempted to prevent Gill and McClain from shooting Johnson and his companions. On the contrary, Houston alerted the gunmen one of Johnson's companions was attempting to escape. After the shots were fired, Houston fled the scene with Gill and McClain. He remained in their company, going to the apartment

of McClain's girlfriend. After being given the murder weapon by Mc-Clain, Houston concealed it. Based upon this evidence, the jury could have reasonably inferred Houston aided and abetted the murder of Johnson.

The second element of accomplice liability was also proved. Houston's participation in the offense clearly took place both before and during the offense.

Finally, there was adequate evidence from which the jury could have concluded the State proved the third element of accomplice liability, that the defendant's participation was accompanied by a concurrent, specific intent to promote or facilitate the commission of the crime. Specific intent need not be shown by words of agreement. The jury may infer an agreement from the conduct of the accused in attaching himself to a group which combines to act in circumstances showing a common design to do an unlawful act to which all assent. (*People v. Dotson* (1991), 214 Ill. App. 3d 637, 644, 574 N.E.2d 143, 148.) Nor is it necessary for the State to prove the accused had the specific intent to promote or facilitate the crime with which he is charged. The law on accountability incorporates the common design rule, which provides that where two or more persons engage in a common criminal design, any acts in furtherance thereof committed by one party are considered to be the acts of all parties to the common design and all are accountable for those acts. *People v. Taylor* (1990), 199 Ill. App. 3d 933, 940, 557 N.E.2d 917, 922.

Thus, the State need only prove the accused had the specific intent to promote or facilitate *a* crime. Once the State proves the accused intended to promote or facilitate *a* crime, it has established the accused's responsibility for *any* criminal act done in furtherance of the intended crime. *People v. Miscichowski* (1986), 143 Ill. App. 3d 646, 655, 493 N.E.2d 135, 141.

Where the accused intended to promote or facilitate a battery, he may be held responsible for the death of the victim. (See *Taylor*, 199 Ill. App. 3d at 941, 557 N.E.2d at 922; *Miscichowski*, 143 Ill. App. 3d at 655, 493 N.E.2d at 141.) With respect to the activity which results in the death of another, our supreme court has stated:

> "Where one attaches himself to a group bent on illegal acts which are dangerous or homicidal in character, or which will probably or necessarily require the use of force and violence that would result in the taking of life unlawfully, he becomes criminally liable for any wrongdoings committed by other members of the group *** even though he did not actively participate in the overt act itself." (*People v. Hughes* (1962), 26 Ill. 2d 114, 119-20, 185 N.E.2d 834, 837.)

Even if Houston did not intend for Johnson to be murdered, he is guilty of murder if he, along with Gill and McClain, formed a common plan to engage in an attack and Johnson was killed during the commission of that attack.

In *Reid,* the supreme court rejected a challenge to the sufficiency of the evidence under similar circumstances. In *Reid,* the defendant was 15 years old, had an intelligence quotient of 78 and a mental age of 11 or 12 years. (*Reid,* 136 Ill. 2d at 64, 554 N.E.2d at 191.) Defendant's 14-year-old sister and two of her teenage friends plotted, in defendant's presence, to commit an armed robbery of an elderly man. (*Reid,* 136 Ill. 2d at 33, 554 N.E.2d at 176.) Defendant accompanied the teens on their search for a victim, stood in front of the victim, blocking his way, remained with the teenagers after the victim had been shot and robbed and agreed to share in the proceeds of the robbery. (*Reid,* 136 Ill. 2d at 64, 554 N.E.2d at 191.) Affirming his convictions for armed robbery and murder, the supreme court noted:

> "Defendant did nothing to discourage Brooks and Davis. At no time did defendant indicate disapproval of the commission of the crimes. He did not extricate himself from participating in the offenses. Not only was defendant present during the perpetration of the offenses, he maintained a close affiliation with Brooks and Davis after the commission of the crimes, failed to report the crimes, and fled the scene. Defendant's acts were voluntary. Thus, evidence of defendant's acts before, during and after the commission of the offenses indicate[s] a common design to do an unlawful act to which defendant assented. Words of agreement are not necessary to establish a common purpose to commit a crime. The common design can be inferred from the circumstances. Consequently, taking all of these circumstances into account, the jury could have concluded defendant was legally accountable for armed robbery and murder." *Reid,* 136 Ill. 2d at 64-65, 554 N.E.2d at 191-92.

In this case Houston attached himself to Gill and McClain, who were involved in a search for the men who had stolen Gill's property. The jury could have inferred from the fact that Houston remained with them even after they smashed Johnson's car windows, and especially after they brandished a gun and McClain stated "let me do it" when confronting Johnson, that Houston formed the intent to promote or facilitate an attack on Johnson. Houston's conduct after the shootings merely reinforces the inference he was a part of the group intent upon attacking the victims. For the foregoing reasons, Houston's conviction of first degree murder is affirmed.

■ Houston next alleges, and the State agrees, convictions were

improperly entered on all five counts of the first degree murder of Johnson. A defendant may only be convicted of one count of murder with respect to a single victim. Where multiple convictions of murder have been entered, the conviction of the count of murder involving the most culpable mental state will stand and the counts involving the lesser mental states will be vacated. (See *People v. Pitsonbarger* (1990), 142 Ill. 2d 353, 378, 568 N.E.2d 783, 792.) Accordingly, Houston's conviction of first degree murder, in that he, without lawful justification, and with the intent to kill Johnson, shot Johnson with a gun, thereby causing his death (count XXIII), will stand. (Ill. Rev. Stat. 1991, ch. 38, par. 9—1(a)(1).) The convictions with respect to counts XXIV through XXVII are vacated.

## III. CONCLUSION

For the foregoing reasons, Houston's conviction of the first degree murder of Johnson (count XXIII) is affirmed and the convictions with respect to counts XXIV through XXVII are vacated.

Affirmed in part; vacated in part.

COOK and GREEN, JJ., concur.