THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JUAN MARTINEZ, Defendant-Appellant.

First District (4th Division)   No. 1—01—3757

Opinion filed July 31, 2003.—Rehearing denied September 11, 2003.

Michael J. Pelletier and Robert Hirschhorn, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, John E. Nowak, and Colin Dunn, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:
A jury convicted defendant Juan Martinez of home invasion,

residential burglary, and first-degree felony murder of his co-felon Raymond Medrano, but found him not guilty of attempted murder and aggravated battery with a firearm. He was sentenced to concurrent terms of 30 years for first-degree felony murder and 10 years for home invasion. On appeal defendant contends that: (1) he was convicted improperly of first-degree felony murder because the shooter's actions were lawfully justified; (2) he was deprived of the effective assistance of counsel; and (3) his conviction and 10-year sentence for home invasion must be vacated because it was a lesser included offense of felony murder.

Manuel Andrade testified that in the early morning hours of November 12, 1999, he and his roommate, Francisco Garcia, were sleeping in their apartment at 315 East Kensington. Prior to going to bed, Andrade had locked both the bolt lock and the chain on his apartment door. The only way to open the bolt lock was with a key. Andrade was awakened by the sound of someone trying to open his apartment door. He grabbed a flashlight and his gun and saw defendant and Medrano trying to enter his apartment. They already had unbolted the door and were trying to unhook the chain. When Andrade asked them what they wanted, they broke down the door and entered the apartment. Medrano, who was wearing a mask, pointed a gun at Andrade and told him to hand over his money and gun. Defendant was not wearing a mask and did not have a gun.

Andrade ran into the kitchen and started banging pots and yelling for help. When Andrade tried to hide behind the refrigerator door, Medrano threw objects that were on top of the refrigerator at him. Medrano then shot at Andrade five or six times, hitting him once in the arm. Andrade shot at Medrano. Medrano then ran out of the apartment. Defendant pointed his finger at Andrade pretending that he had a gun. Andrade yelled to Garcia, who was hiding in a closet, to get his other gun. Defendant then ran. Andrade walked out of his apartment door and saw Medrano lying on the ground outside the building.

Officer Keith Threatt testified that he responded to a call of shots fired at 315 East Kensington at 3:50 a.m. on November 12, 1999. At the scene he saw Medrano's body lying on the ground near the rear of the building. Medrano was dressed in black from head to toe, including black gloves and a black ski mask. Inside the apartment, Threatt found a wounded Andrade.

The parties stipulated that Medrano died from multiple gunshot wounds.

Joachim Torres, owner of the building at 315 East Kensington, testified that defendant previously had rented the same apartment occupied by Andrade. Defendant failed to return the apartment keys when he moved out and the locks were never changed.

On November 14, 1999, defendant gave a videotaped statement to the assistant State's Attorney. Defendant stated that on the morning of November 12, 1999, Medrano informed defendant of his plan to rob a house. Medrano planned to grab the homeowner in a headlock while defendant took the most valuable things from the apartment. When Medrano picked up defendant a few hours later, he gave defendant a mask and they proceeded to 315 East Kensington. The two men entered the apartment building and walked up to Andrade's apartment, the same apartment defendant had lived in a year earlier. As Medrano was knocking down the door, Andrade showed his gun. Medrano then showed his gun to Andrade. Defendant claimed that he did not know Medrano had a gun with him. Andrade began shooting. As soon as defendant heard gunshots he ran.

Defendant presented no evidence. The jury found defendant guilty of home invasion, residential burglary, and first-degree felony murder of Medrano and not guilty of attempted murder of Andrade and aggravated battery with a firearm against Andrade. Defendant unsuccessfully moved for a new trial. The circuit court merged defendant's conviction for residential burglary into his conviction for home invasion and sentenced defendant to concurrent terms of 30 years for first-degree felony murder and 10 years for home invasion.

## I

Defendant first contends that his conviction for felony murder must be reversed because (1) the killing of Medrano was lawfully justified and therefore not within the statutory definition of felony murder; (2) the killing was not foreseeable; and (3) the jury was not instructed properly as to the elements of felony murder.

## A

Defendant argues that his conviction for felony murder must be reversed because one of the essential elements of the offense, lack of lawful justification, was absent.

■ Pursuant to section 9—1(a)(3) of the Criminal Code of 1961 (720 ILCS 5/9—1(a)(3) (West 2000)) (section 9—1(a)(3)):

> "A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:

> ❊ ❊ ❊

> (3) he is attempting or committing a forcible felony other than second degree murder."

As the State points out, "without lawful justification" is not an element of the offense of first-degree murder in this case. See *People v. Williams*, 80 Ill. App. 3d 963, 400 N.E.2d 532 (1980) (*Williams*); *People*

*v. Miscichowski*, 143 Ill. App. 3d 646, 493 N.E.2d 135 (1986) (*Miscichowski*). The words "without lawful justification" are a reference to affirmative defenses defendant could raise once charged. Unless a defendant presents some evidence of such an affirmative defense, the State's proof is complete without evidence that the act was without lawful justification. *Williams*, 80 Ill. App. 3d at 969; *Miscichowski*, 143 Ill. App. 3d at 653.

In the case at bar, defendant never raised any affirmative defenses or presented any evidence showing that his actions were legally justified. Defendant argues that because the actual shooter was the intended victim and his use of deadly force was legally justified, the absence of justifiable force became an element in this case. It is undisputed that Andrade acted in self-defense and defense of his dwelling and therefore was justified when he shot Medrano. According to defendant, the State's proof placed this element at issue.

Defendant posits that because the actual shooter was legally justified when he killed Medrano, the killing does not fall within the statutory definition of felony murder. Defendant's argument seems to rest on an "agency" theory of the felony murder doctrine, *i.e.*, because the actual shooter was justified in shooting the co-felon, then defendant was justified as well. Under such a theory " 'the doctrine of felony murder does not extend to a killing, although growing out of the commission of the felony, if directly attributable to the act of one other than the defendant or those associated with him in the unlawful enterprise.' " *People v. Lowery*, 178 Ill. 2d 462, 466, 687 N.E.2d 973 (1997) (*Lowery*), quoting *State v. Canola*, 73 N.J. 206, 211-12, 374 A.2d 20, 23 (1977). Our supreme court has held unequivocally, however, that Illinois follows the proximate cause theory of felony murder as opposed to the agency theory. *People v. Hickman*, 59 Ill. 2d 89, 319 N.E.2d 511 (1974) (*Hickman*); *Lowery*, 178 Ill. 2d at 469; *People v. Dekens*, 182 Ill. 2d 247, 695 N.E.2d 474 (1998) (*Dekens*).

■ "Consistent with the proximate cause theory, liability should lie for *any* death proximately related to the defendant's criminal conduct." (Emphasis added.) *Dekens*, 182 Ill. 2d at 252. Therefore, defendant is subject to the felony murder doctrine if the "decedent's death is the direct and proximate result of the defendant's felony." *Dekens*, 182 Ill. 2d at 252. Under the proximate cause theory, the fact that the victim is a co-felon is immaterial. *Dekens*, 182 Ill. 2d at 252 (defendant's felony murder conviction upheld where decedent was a co-felon who was killed by the intended victim of the defendant and co-felon); *People v. Rhoden*, 299 Ill. App. 3d 951, 702 N.E.2d 209 (1998). Application of the felony murder doctrine does not depend on the guilt or innocence of the person killed during the felony or on the identity

of the person whose act caused the decedent's death. *Dekens*, 182 Ill. 2d at 252. The committee comments to section 9—1(a)(3) state:

> "It is immaterial whether the killing in such a case is intentional or accidental, or is committed by a confederate without the connivance of the defendant [citations] or even by a third person trying to prevent the commission of the felony." 720 ILCS Ann. 5/9—1, Committee Comments—1961, at 15 (Smith-Hurd 2002).

In *Hickman* defendant and his co-felons fled after they were seen by police committing a burglary. An officer who was pursuing the burglars mistakenly was shot and killed by another officer, who mistook him for one of the burglars. Our supreme court rejected defendants' argument that they could not be found guilty of felony murder "because the death of [the officer] was the result of a justifiable and lawful act by another police officer who was not acting in concert with the defendants nor in furtherance of their conduct." *Hickman*, 59 Ill. 2d at 92. The court noted that "[t]he commission of the burglary, coupled with the election by defendants to flee, set in motion the pursuit by armed police officers. The shot which killed [the officer] was a shot fired in opposition to the escape of the fleeing burglars, and it was a direct and foreseeable consequence of defendants' actions." *Hickman*, 59 Ill. 2d at 94.

■ Our supreme court has noted that "[b]ecause of the extremely violent nature of felony murder, we seek the broadest bounds for the attachment of criminal liability." *People v. Dennis*, 181 Ill. 2d 87, 105, 692 N.E.2d 325 (1998). Under the proximate cause theory of felony murder, whether or not Andrade was legally justified in shooting Medrano is irrelevant to the question of whether or not defendant is guilty of the murder. As the supreme court stated in *Lowery*, "the proper focus of this inquiry is not whether [the shooter] was justified in his actions, but whether defendant's actions set in motion a chain of events that ultimately caused the death of decedent." *Lowery*, 178 Ill. 2d at 473.

B

Defendant next argues that his conviction must be reversed because Medrano's death was not the foreseeable consequence of defendant's initial criminal acts. Specifically, defendant argues that Medrano's death was not foreseeable because he did not know that Medrano was armed and he and Medrano did not plan to use any force other than putting Andrade in a headlock. Defendant further contends that any notion of foreseeability was precluded by the jury acquitting him of attempted murder and aggravated battery with a firearm.

■ On review, a conviction will not be set aside on grounds of insufficient evidence unless the proof is so improbable or unsatisfac-

tory that there remains a reasonable doubt as to defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 478 N.E.2d 267 (1985) (*Collins*). The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); *Collins*, 106 Ill. 2d at 261.

●5 Conviction for felony murder requires that decedent's death must have been the direct and proximate result of defendant's felony. *Dekens*, 182 Ill. 2d at 252. Where defendant's actions set "in motion a chain of events which were or should have been within his contemplation when the motion was initiated, he should be held responsible for any death which by direct and almost inevitable sequence results from the initial criminal act." *Lowery*, 178 Ill. 2d at 467. It is unimportant that defendant did not anticipate the precise sequence of events that followed upon his initial unlawful conduct; if his acts precipitated those events, he is responsible for the consequences. *Lowery*, 178 Ill. 2d at 470.

█ In the present case, defendant initiated the chain of events when he, along with Medrano, broke into Andrade's apartment in the middle of the night. It was entirely foreseeable that Andrade would try to resist their unlawful actions. See *Hickman*, 59 Ill. 2d at 94 ("[t]hose who commit forcible felonies know they may encounter resistance, both to their affirmative actions and to any subsequent escape"); *People v. Smith*, 56 Ill. 2d 328, 307 N.E.2d 353 (1974).

Without merit is defendant's further argument that forseeability was precluded by the jury's acquittal of defendant on the charges of attempted murder and aggravated battery with a firearm based on accountability. Defendant's acquittal indicates a jury finding that defendant did not share the same criminal intent or engage in a common criminal design with Medrano as to those charges, presumably because defendant did not know Medrano was armed. According to defendant he could not foresee Medrano's use of a gun that defendant did not know existed. It is irrelevant, however, that defendant did not anticipate the precise sequence of events that followed his unlawful entry into Andrade's apartment. See *Lowery*, 178 Ill. 2d at 470. "[T]he fact that the precise manner in which death occurred to a particular victim may not have been foreseen by that felon also does not relieve him of responsibility." *People v. Pugh*, 261 Ill. App. 3d 75, 78, 634 N.E.2d 34 (1994). It was entirely foreseeable that Andrade would resist defendant's unlawful actions. See *Hickman*, 59 Ill. 2d at 94. The jury consistently found that defendant shared the same criminal intent or engaged in a common criminal design with Medrano to commit

home invasion and residential burglary. Such finding was supported by defendant's videotaped statement. Medrano's death was a foreseeable consequence of defendant's conduct in committing the forcible felonies of home invasion and residential burglary.

When the evidence is viewed in the light most favorable to the prosecution, it cannot be said that no rational trier of fact could have found that Medrano's death was a direct and foreseeable consequence of defendant's original actions.

## C

■ Defendant next argues that his felony murder conviction must be reversed because the jury was not instructed properly as to the elements of felony murder. According to defendant, the felony murder issues instruction was improper because it omitted the statutory element of lack of justification. As discussed in point I.A., lack of justification was not an element of first-degree felony murder in the case at bar. See *Williams*, 80 Ill. App. 3d at 968-69; *Miscichowski*, 143 Ill. App. 3d at 653. See also *People v. Worsham*, 26 Ill. App. 3d 767, 326 N.E.2d 134 (1975) (finding that the phrase "without lawful justification" properly was omitted from the jury instruction on the definition of battery where defendant did not raise an affirmative defense of justification).

Defendant further argues that the instructions on felony murder/accountability (Instruction No. 5.03A, modified)[1] and the elements of felony murder (Instruction No. 7.02, modified)[2] conflicted. The State responds that the two instructions accurately state the law.

---

[1]"To sustain the charge of first degree murder it is not necessary for the State to show that it was or may have been the original intent of the defendant that the deceased, Raymond Medrano, be killed. It is sufficient if the jury believes from the evidence beyond a reasonable doubt that the defendant, or one for whose conduct he is legally responsible, combined to do an unlawful act, such as commit home invasion or residential burglary and that the deceased was killed as a foreseeable consequence of the parties committing that unlawful act."

[2]Instruction No. 7.02, modified, provided in pertinent part:
   "To sustain the charge of first degree murder the State must prove the following propositions:
      *First*: That the defendant, or one for whose conduct he is legally responsible, performed the acts which ultimately resulted in the death of Raymond Medrano; and
      *Second*: That when the defendant, or one for whose conduct he is legally responsible, did so he was committing the offenses of home invasion and residential burglary."

■ In reviewing the adequacy of jury instructions, the appellate court must consider the instructions as a whole to determine if they fully and fairly cover the law. *People v. Nutall*, 312 Ill. App. 3d 620, 728 N.E.2d 597 (2000). "The function of instructions is to convey to the jury the correct principles of law applicable to the evidence so the jury can apply the proper legal principles to the facts and arrive at a proper conclusion based on the law and the evidence." *People v. Peebles*, 125 Ill. App. 3d 213, 217, 465 N.E.2d 539 (1984).

■ In the present case the instructions as a whole fully and fairly cover the law. Defendant could be accountable for the actions of Medrano, but not for the actions of Andrade, the intended victim. See *People v. Williams*, 324 Ill. App. 3d 419, 753 N.E.2d 1089 (2001) (to prove accountability the State must show that either: (1) defendant shared the criminal intent of the principal; or (2) there was a common criminal design). Defendant and Medrano were part of a common criminal design to enter and burglarize Andrade's apartment as evidenced by defendant's videotaped statement. Defendant could not be accountable for the actions of Andrade, however, because Andrade did not have any criminal intent and there was no common criminal design shared by defendant and Andrade. The language "or one for whose conduct he is legally responsible" in the elements instruction refers to Medrano. The "acts" referred to in the statement "performed the acts which ultimately resulted in the death" in the elements instruction refers to the home invasion and residential burglary. The accountability instruction makes it clear that the death had to be a foreseeable consequence of defendant or Medrano committing the home invasion and/or residential burglary.

The instructions as a whole correctly set forth the law of felony murder.

Defendant properly was convicted of felony murder.

II

Defendant next contends that he is entitled to a new trial because he was denied the effective assistance of counsel where his trial counsel admitted defendant's participation in the predicate felonies, thereby effectively admitting guilt on the felony murder.

■ Ineffective assistance of counsel is established when a defendant shows that: (1) counsel's representation fell below an objective standard of reasonableness and (2) counsel's error prejudiced the defendant in that but for counsel's shortcomings, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984) (*Strickland*); *People v. Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984). The fundamental

concern underlying this test is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064. Defendant must overcome the strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not incompetence. *People v. Coleman,* 183 Ill. 2d 366, 701 N.E.2d 1063 (1998). The prejudice prong of the *Strickland* test requires "a reasonable probability of a different result, not merely a possibility." *People v. Gacy,* 125 Ill. 2d 117, 129-30, 530 N.E.2d 1340 (1988). An insufficient showing as to either prong of the *Strickland* test will defeat the claim. *People v. Palmer,* 162 Ill. 2d 465, 643 N.E.2d 797 (1994).

Relying on *People v. Chandler,* 129 Ill. 2d 233, 543 N.E.2d 1290 (1989) (*Chandler*), defendant argues that defense counsel's performance fell below an objective standard of reasonableness. In *Chandler,* defendant was charged with murder, residential burglary, and aggravated arson. The evidence established that two persons broke into the victim's house, stole several items, stabbed and killed the victim, and then set the house on fire. In both opening and closing statements, defense counsel conceded the truth of defendant's statement admitting his involvement in the crime but denied that defendant was guilty of murder. Under the law of felony murder and accountability, however, the concessions of defense counsel amounted to a concession of guilt. Our supreme court found that defendant received ineffective assistance of counsel.

Our supreme court has revisited the *Chandler* holding several times and has noted that the determination in *Chandler* that counsel was ineffective was not based exclusively on counsel's apparent failure to comprehend the law of felony murder and accountability. Apart from admitting the accuracy of defendant's statement, which was sufficient to convict him, defense counsel in *Chandler* failed to cross-examine several key prosecution witnesses, conducted only cursory cross-examination of others, and called no witnesses to testify, including defendant, despite his assertion in his opening statement that defendant would testify and tell the jury what he did and did not do. See *People v. Williams,* 192 Ill. 2d 548, 736 N.E.2d 1001 (2000); *People v. Shatner,* 174 Ill. 2d 133, 673 N.E.2d 258 (1996) (*Shatner*); *People v. Page,* 155 Ill. 2d 232, 614 N.E.2d 1160 (1993). Counsel's fundamental misapprehension of the law colored the entire course of the proceedings, rendering his strategy and actions "no real defense at all." *Chandler,* 129 Ill. 2d at 249.

The case *sub judice* is more akin to *Shatner,* where the supreme court found that defendant had failed to establish ineffective assistance

of counsel. In *Shatner*, defense counsel conceded the truth of defendant's statement admitting his involvement in a crime, but claimed that an accomplice actually killed the victim. Defense counsel also thoroughly and vigorously cross-examined almost every State witness and argued that although defendant might be guilty of the underlying felony, he should not be convicted of murder because of his minimal involvement in the scheme. The supreme court noted that "[u]ltimately, it was the defendant's own statements, *** and not the actions or strategy of his counsel, which undermined any claim of innocence that defendant may have had. If a defendant enters a not-guilty plea in the face of overwhelming evidence of his guilt, we are unwilling to find that his counsel was ineffective simply because he failed to contrive a leak-proof theory of innocence on defendant's behalf." *Shatner*, 174 Ill. 2d at 148. The supreme court recognized the riskiness of defense counsel's strategy, but noted that "it was strategy nonetheless, and perhaps the only strategy which could have been seriously pursued given defendant's admissible incriminating statements and the overwhelming evidence of his guilt." *Shatner*, 174 Ill. 2d at 148.

▮ In the present case, defense counsel chose to concede the truth of defendant's statement admitting his involvement in the plan to break into Andrade's apartment with the intent to commit residential burglary. This strategy allowed counsel also to use the helpful parts of the statement, such as defendant's contention that he did not know that Medrano was armed and that there was no plan to commit an armed robbery, to his benefit. It should be noted that defense counsel's representation won defendant acquittals on the charges of attempted murder and aggravated battery with a firearm. Unlike *Chandler*, defense counsel's strategy and actions did not amount to "no real defense at all." Prior to trial, defense counsel unsuccessfully moved to quash defendant's arrest and suppress evidence, including defendant's videotaped statement. Counsel presented cogent opening and closing statements and thoroughly cross-examined the State's key witnesses. Counsel argued throughout trial that defendant was not guilty of murder because Medrano's death was not a foreseeable consequence of defendant's actions. Following the guilty verdict, counsel filed and argued a motion for a new trial raising, *inter alia*, the issue of legally inconsistent verdicts. As in *Shatner*, it was defendant's own statements which undermined any claims of innocence he may have had.[3]

Defendant argues that the focus of the ineffectiveness claim is not

---

[3]Defendant's reliance on *People v. Land*, 169 Ill. App. 3d 342, 523 N.E.2d

just on what counsel did, but also on what he failed to do. According to defendant, counsel should have challenged the application of the felony murder statute to the facts here by seeking dismissal of the charges and should have ensured that the jury was instructed that lack of justification was an element of felony murder. As discussed at length in point I, defendant's arguments are without merit.

Here, as in *Shatner*, defense counsel's performance was not deficient.

## III

Finally, defendant contends that his conviction and 10-year sentence for home invasion must be vacated because home invasion was a lesser included offense of the felony murder for which he was also convicted and sentenced. According to defendant, home invasion served as the predicate felony for his first-degree felony murder conviction.

Defendant failed to object at the sentencing hearing to having been convicted and sentenced for home invasion on the basis that the home invasion was a lesser included offense of felony murder. Therefore, defendant has waived this issue. *People v. Smith*, 183 Ill. 2d 425, 701 N.E.2d 1097 (1998) (*Smith*); *People v. Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124 (1988). Because the conviction and sentence for home invasion affect defendant's substantial rights, however, the lesser included offense issue will be addressed. *Smith*, 183 Ill. 2d at 430.

The State responds that defendant properly was convicted and sentenced for home invasion where the jury found defendant guilty of first-degree murder via a general finding of guilt. A general finding of guilt is presumed to be based on any good count in the indictment to which the proof is applicable. *People v. Cardona*, 158 Ill. 2d 403, 634

---

711 (1988) (*Land*), *People v. Serrano*, 286 Ill. App. 3d 485, 676 N.E.2d 1011 (1997) (*Serrano*), and *People v. Morgan*, 307 Ill. App. 3d 707, 718 N.E.2d 206 (1999), *aff'd*, 197 Ill. 2d 404, 758 N.E.2d 813 (2001) (*Morgan*), is misplaced. In *Land*, the court held that "the predicate felony upon which the murder conviction is based must involve an intentional or knowing state of mind." *Land*, 169 Ill. App. 3d at 357. Both home invasion and residential burglary require a knowing state of mind. See 720 ILCS 5/12—11(a) (West 2000); 720 ILCS 5/19—3(a) (West 2000). In *Serrano*, the court found that compulsion could be a defense to felony murder because it could negate the predicate felony. In the present case, defendant did not raise any affirmative defenses, including compulsion. In *Morgan*, the court held that "the predicate felony underlying a charge of felony murder must involve conduct with a felonious purpose other than the killing itself." *Morgan*, 307 Ill. App. 3d at 714. The predicate felonies involved in the present case (home invasion and residential burglary) involved conduct with a felonious purpose other than the killing of Medrano.

N.E.2d 720 (1994) (*Cardona*). Where the indictment contains several counts arising out of a single transaction and a general verdict is returned, the effect is that the defendant is guilty as charged in each count to which the proof is applicable. *Cardona*, 158 Ill. 2d at 411.

In the present case the trial proceeded on two counts of felony murder, one predicated on home invasion and one predicated on residential burglary. Relying on *Cardona*, the State argues that because the jury entered a general guilty verdict for first-degree murder, defendant is guilty of both counts of felony murder. Therefore, defendant properly was sentenced on one count of felony murder predicated on residential burglary and one count of home invasion.

In support of this argument, the State maintains that defendant's convictions for home invasion and residential burglary do not violate the one-act, one-crime rule, which provides that if more than one offense arises out of the same physical act, a defendant may not be convicted for more than one offense. See *People v. King*, 66 Ill. 2d 551, 363 N.E.2d 838 (1977) (*King*). The State ignores the supreme court's decision in *People v. McLaurin*, 184 Ill. 2d 58, 703 N.E.2d 11 (1998) (*McLaurin*). In *McLaurin*, defendant was convicted of and sentenced for both residential burglary and home invasion. The supreme court vacated defendant's conviction and sentence for residential burglary finding that the offenses of residential burglary and home invasion were predicated upon the same physical act, an unauthorized entry into the victim's home.[4]

Similarly, in the present case the offenses of home invasion and residential burglary were carved from the same physical act of entering Andrade's residence. Under the principles enunciated in *McLaurin*, defendant's conviction for residential burglary cannot stand. Presumably recognizing this fact, the circuit court stated at the sentencing hearing that defendant's residential burglary conviction merged into his conviction for home invasion. Consequently, without merit is the State's contention that defendant was sentenced on one count of felony murder with a predicate felony of residential burglary and one count of home invasion. Defendant was sentenced on one count of felony murder with a predicate felony of home invasion and one count of home invasion.

---

[4]The appellate decisions relied upon by the State were decided prior to the supreme court's decision in *McLaurin* and therefore are not dispositive. See *People v. Stokes*, 281 Ill. App. 3d 972, 667 N.E.2d 600 (1996); *People v. Jones*, 148 Ill. App. 3d 133, 498 N.E.2d 772 (1986); *People v. Govednik*, 150 Ill. App. 3d 717, 502 N.E.2d 276 (1986); *People v. Snow*, 124 Ill. App. 3d 955, 464 N.E.2d 1262 (1984).

Multiple convictions are improper if they are based on lesser included offenses. *King*, 66 Ill. 2d at 566. In *Smith*, defendant was charged with and found guilty of (1) felony murder with a predicate felony of armed robbery and (2) armed robbery. The supreme court vacated defendant's conviction and sentence for the lesser included offense of armed robbery. "Because the armed robbery *** is a lesser included offense of felony murder in this case, the included offense of armed robbery will not support a separate conviction and sentence." *Smith*, 183 Ill. 2d at 432. See also *People v. Coady*, 156 Ill. 2d 531, 622 N.E.2d 798 (1993) (where armed robbery was the offense underlying the felony murder charge and, therefore, a lesser included offense of felony murder, it would not support a separate conviction and sentence); *People v. Washington*, 272 Ill. App. 3d 913, 919, 651 N.E.2d 625 (1995) ("in the case of felony murder, the underlying felony is a lesser included offense because the felony is established by proof of the same or less than all of the facts required to establish the offense of the felony murder").

Similarly, in the case at bar, because the home invasion is a lesser included offense of felony murder, the home invasion will not support a separate conviction and sentence. Defendant's conviction and sentence for the lesser included offense of home invasion must be vacated.

For the reasons set forth above, the judgment of the circuit court of Cook County is affirmed in part and vacated in part.

Affirmed in part and vacated in part.

THEIS, P.J., and KARNEZIS, J., concur.