THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANGELA FALLS, Defendant-Appellant.

First District (2nd Division)   No. 1—06—3040

Opinion filed December 31, 2008.

Michael J. Pelletier and Christopher Kopacz, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald, Douglas P. Harvath, and Monica R. George, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CUNNINGHAM delivered the opinion of the court:

The defendant, Angela Falls, was tried by a jury for battery and

resisting a peace officer. She was acquitted of battery but convicted of resisting a peace officer and sentenced to the time she had served in jail while awaiting trial. On appeal, the defendant contends that she was deprived of a fair trial when: (1) the trial court refused to answer two questions sent to it by the jury during its deliberations; (2) the prosecutor improperly shifted the burden of proof to the defendant when the prosecutor reminded the jury that no witness was called to corroborate the defendant's testimony; and (3) the trial court prevented the defendant from introducing testimony regarding her reputation in the community for truthfulness after the prosecution made an issue of the defendant's character. The defendant also asserts that her guilt was not established beyond a reasonable doubt. We find reversible error by the trial court and remand for a new trial.

## BACKGROUND

The State's case was based primarily upon the testimony of Deputy Sheriff Ronald Lapka (Sheriff Lapka). On July 15, 2005, he was working at the X-ray machine at the criminal court building located at 26th Street and California Avenue in Chicago. The defendant had worked as a probation officer in the building for approximately 15 years. According to Sheriff Lapka, courthouse employees entering the courthouse were required to place their bags on a conveyor belt for X-ray scanning, walk through a metal detector, and display their identification badge to security personnel. Sheriff Lapka testified that the defendant initially objected when Sheriff Lapka's fellow worker, Deputy Sheriff Bridgette Insley (Sheriff Insley), instructed her to place her purse on the conveyor belt. The defendant said, "This is ridiculous. I am an employee. I don't have to go through this." Sheriff Lapka approached and instructed the defendant to place her purse on the conveyor belt. The defendant first claimed that the conveyor belt was not moving, but when Sheriff Lapka told her he would make it move as soon as she placed her purse on it, she complied. However, she also described the request as "ridiculous" and said that as a 15-year employee she should not have to "go through this." Sheriff Lapka testified that when he asked for her identification badge and told her he would advise her supervisor of her behavior, the defendant struck him on his arm, just above his wrist. Sheriff Lapka then announced that he was arresting her for battery. When he attempted to handcuff the defendant's hands behind her back, she pulled one arm free, stating "You can't arrest me. I'm an officer just like you." Sheriff Lapka then called on the assistance of Deputy Sheriff Jessica Vergara (Sheriff Vergara). After five or six instructions to the defendant to place her arm behind her back, during which time she kept pulling her arm

away, they finally were able to handcuff her and take her to a processing room.

Sheriff Vergara testified that she heard Sheriff Lapka ask the defendant for identification and then heard the defendant complain about the request because she had been working in the building for 15 years. The defendant placed her purse on the conveyor belt while continuing to complain about having to do so. When Sheriff Lapka again asked the defendant for identification, Sheriff Vergara heard what she described as a slap. However, she did not see the defendant make contact with Sheriff Lapka. Sheriff Vergara then heard Sheriff Lapka announce that he was arresting the defendant. The defendant kept her arm up in the air initially, but Sheriff Vergara and Sheriff Lapka were finally able to handcuff the defendant.

Three other State witnesses testified. Deputy Sheriff Ester Jones heard the sound of wrestling and saw Sheriff Lapka trying to handcuff the defendant. The defendant was pulling away and saying that Sheriff Lapka was not going to arrest her. Deputy Sheriff Heather Nolan (Sheriff Nolan) saw the defendant being handcuffed and then processed her after she was arrested. Sheriff Nolan claimed that after the defendant signed a *Miranda* warning, she asked the defendant what happened. The defendant told her that she had pushed Sheriff Lapka's hand away. Frank Hernandez was cleaning the lobby as a community service sentence at the time of the incident. From a distance of 15 feet he saw the defendant arguing with the sheriff's deputies. The defendant put her purse on the conveyor belt but Hernandez did not see her produce any identification. Next Hernandez saw the defendant reach her arm back and slap one of the sheriff's deputies on the wrist. While the sheriff's deputy tried to handcuff the defendant, she was swinging her right arm back and forth. Hernandez testified that several days later his boss and another sheriff's deputy took him to a room containing four to six sheriff's deputies. They asked if he had seen the incident and if he would sign a statement about what he saw. Hernandez agreed to do so.

Testifying in her own defense, the defendant denied ever having struck Sheriff Lapka. On the day in question she returned to the building from lunch and followed several employees through the metal detector without setting off an alarm. She was carrying her purse when she walked through, and she then began walking toward the elevators. Sheriff Insley called her back, asking if she worked there. The defendant said yes, showed her badge, and then walked away. Sheriff Lapka called her back again and told her to place her purse on the conveyor belt. The defendant walked through the metal detector back to the start of the conveyor belt and, after some conversation

with Sheriff Lapka about the conveyor belt not moving, she placed her purse on the conveyor belt and it went through the scanner without incident. However, Sheriff Lapka then began yelling at her and pointing his finger in her face, saying "[Y]ou people don't want to follow the rules." The defendant told him not to talk to her like that, noting that she had done what he told her to do. Sheriff Lapka told her "I can talk to you any way I want to talk to you" and poked the bridge of her nose with his finger, which caused her pain. The defendant recalled that she put her hand up to stop him from poking her again. She could not recall whether her hand touched him at that time.

According to the defendant, Sheriff Lapka came around the table and began to dig his fingernails into her wrist, without telling her that he was arresting her. Other sheriff's deputies approached and Sheriff Lapka handcuffed and arrested her. The defendant denied resisting Sheriff Lapka, although she did tell him that he had hurt her by squeezing her wrist tightly.

The defendant presented the corroborating testimony of a courthouse custodian, Raymond Rake, who testified that he saw the defendant enter the building and place her purse by the metal detector. He also saw that the defendant had her identification badge with her. When a male sheriff's deputy shook his finger in the defendant's face and Rake heard voices being raised, he went to summon the defendant's supervisor. When he returned to the lobby, the defendant was gone.

The defense also presented the testimony of three of the defendant's co-workers. Each testified that the defendant had an excellent reputation in the community for peacefulness. But the trial court, over defense counsel's objection, refused to allow defense counsel to ask the witnesses about the defendant's reputation in the community for truthfulness.

After the jurors began their deliberations, they sent a note to the trial court, asking "If a person says, 'I'm not guilty. Why are you arresting me? Hold on one second,'—is this resisting arrest?" Although defense counsel asked the court to tell the jurors that the answer to their question was "No," the court refused, saying that this was for the jurors to decide and that it could not tell them that "her acts described in this are not guilty." Accordingly, the court instructed the jurors to refer to the original instructions given by the court at the start of deliberations.

Later the same day, the jurors sent a second note to the trial judge, asking "Does resisting a peace officer have to be a physical act, or can it be verbal?" Defense counsel noted to the judge that the jury was essentially asking the same question as before. The trial judge again

refused to answer their question, saying "Let's see how they do. They're asking for [the] definition of resisting a peace officer. That's in the instruction. If they don't reach some kind of agreement soon, I'll give them a [*Prim*][1] instruction."

When the jurors informed the court that they had reached a decision on the battery charge but could not resolve the charge of resisting a peace officer, the court gave them the *Prim* instruction. That evening they found the defendant not guilty of battery but guilty of resisting a peace officer.

In his motion for a new trial, defense counsel renewed his objection to the court's failure to answer the jury's questions. Defense counsel also told the court that after the trial ended, the jurors asked the lawyers for both sides to come to the jury room. Two or three of the jurors told the lawyers they had been confused about the charge of resisting a peace officer even after hearing the court's responses to their questions. The court denied the motion for a new trial and subsequently sentenced the defendant to time served. This appeal followed.

## ANALYSIS

■ We first consider the defendant's contention that she was denied a fair trial when the trial court refused to answer two crucial questions asked of it by the jurors during their deliberations. A trial court's decision whether to answer and how to answer questions asked by jurors during deliberations is ordinarily left to the discretion of the trial court, so that the court's decision will be disturbed on appeal only if that decision constituted an abuse of discretion. *People v. Landwer*, 279 Ill. App. 3d 306, 314, 664 N.E.2d 677, 683 (1996). But when the jurors ask the court to clarify the law, it is the duty of the court to answer their questions. *People v. Childs*, 159 Ill. 2d 217, 228-29, 636 N.E.2d 534, 539-40 (1994); *People v. Gray*, 346 Ill. App. 3d 989, 993, 806 N.E.2d 753, 756 (2004). The failure to clarify jury confusion as to a critical point of law is prejudicial error. *People v. Cortes*, 181 Ill. 2d 249, 280, 692 N.E.2d 1129, 1142 (1998); *Childs*, 159 Ill. 2d at 229, 636 N.E.2d at 539-40. Thus in *Childs*, the defendant's convictions for murder and armed robbery were reversed and he was granted a new trial because the trial judge failed to clarify the jury's obvious confusion as to whether a conviction of armed robbery would require also convicting the defendant of murder. *Childs*, 159 Ill. 2d at 229-35, 636 N.E.2d at 540-42.

---

[1]This instruction urges the jury to continue deliberations and to consult with one another with a goal of reaching a decision. See *People v. Prim*, 53 Ill. 2d 62, 75-76, 289 N.E.2d 601, 609 (1972).

It is clear from our review of the facts of this case that a critical element at issue for the jury was whether the resistance required for resisting a peace officer had to be physical resistance. The defendant testified that she never struck Sheriff Lapka, as he alleged. She said that at most she raised her hand in self-defense when he poked her in the face. She could not recall whether at that time her hand touched Sheriff Lapka. The State's evidence was that the defendant forcibly struck Sheriff Lapka's hand as they argued. In final argument, defense counsel argued to the jury that without any physical action by the defendant, she could not be guilty of resisting a peace officer. It is also clear that the jurors were troubled and confused by this legal issue, as they repeatedly asked the trial court to explain to them whether physical resistance was necessary to constitute resisting a peace officer. The trial court refused to resolve their confusion, instead referring them to the instruction it had given, which failed to include what Illinois case law makes clear; that there can be no crime of resisting a peace officer unless the defendant engages in a physical act intended to interfere with that officer's exercise of his duties. *People v. Raby*, 40 Ill. 2d 392, 398-99, 240 N.E.2d 595, 599 (1968); *People v. Hilgenberg*, 223 Ill. App. 3d 286, 289, 585 N.E.2d 180, 183 (1991). The instruction on resisting a peace officer given to the jury by the trial court in this case stated: "A person commits the offense of resisting a peace officer when he *knowingly resists* the performance of any authorized act within the official capacity of one known to him to be a peace officer." (Emphasis added.) By merely referring the jurors back to this instruction, the court may well have left them with the impression that no physical resistance was required, for the instruction mentions no such requirement. This error was magnified when, following the entry of the verdict, several jurors sought out the trial attorneys and told them they were confused on this issue.

It is also noteworthy that the jury rejected the battery charge against the defendant, which was clearly premised on the defendant having struck Sheriff Lapka. The jury was instructed that to convict the defendant for battery, the prosecution had to prove beyond a reasonable doubt that the defendant "made physical contact of an insulting or provoking nature with [Sheriff Lapka]." But, as we have noted, the instruction on resisting a peace officer was silent as to whether physical contact or activity was necessary to convict. Thus the jury could have accepted the defendant's testimony about never striking Sheriff Lapka and still erroneously convicted her of resisting a peace officer. For all of these reasons, we find that the trial court erred when it refused to answer the jury's questions about a critical point of law not covered by the instruction which they were given.

■ We also find that the trial court erred when it prevented the defendant from introducing testimony of her reputation in the community for truthfulness. Three witnesses who knew the defendant testified to her reputation in the community for peacefulness. But they were barred from testifying as to the defendant's reputation in the community for truthfulness. The defendant's truthfulness had been attacked by the prosecution in cross-examination. The prosecutor sought to impeach the defendant three times concerning omissions in her written statement which accompanied the claim she filed with the internal affairs department of the sheriff's office. The prosecutor noted that the statement did not include the defendant's trial testimony that Sheriff Lapka told her he intended to report her to her supervisor, that he dug his nails into her wrist, and that she felt pain when he poked her in the face with his finger. Clearly the prosecutor was suggesting that these omissions indicated that the defendant had lied during her trial testimony. This attack on the defendant's truthfulness entitled her to present witnesses who would testify to her reputation in the community for truthfulness. The trial court should have allowed the defendant the opportunity to present this clearly relevant evidence. Barring such testimony may in itself constitute reversible error where the evidence is close. *People v. Bascomb*, 74 Ill. App. 3d 392, 399, 392 N.E.2d 1130, 1135 (1979). This case came down to whether the jury believed the defendant or the State's witnesses, and the prosecution attacked the defendant's truthfulness. The defendant was entitled to present the rehabilitating testimony of witnesses who would affirm her general reputation in the community for truthfulness. See *People v. Krause*, 241 Ill. App. 3d 394, 401, 609 N.E.2d 980, 985 (1993). Accordingly, we hold that the trial court committed reversible error when it refused to answer the jury's questions on a critical element of the law and refused to allow the defendant to present evidence of her reputation in the community for truthfulness.

Because of our resolution of these two issues, we do not reach the defendant's claim that in final argument the prosecutor improperly shifted the burden of proof to her.

The defendant has also asserted that the State failed to prove her guilty of resisting a peace officer. We find that the jury was presented with sufficient evidence, if believed, to support a guilty verdict, although we do not evaluate the evidence to be presented at a second trial. Our conclusion is simply to assure that upon remand for a new trial, the defendant will not be subject to double jeopardy. *People v. Lopez*, 229 Ill. 2d 322, 366-68, 892 N.E.2d 1047, 1072-73 (2008).

For the reasons set forth in this opinion, we reverse the defendant's

conviction for resisting a peace officer and remand for a new trial on that charge.

Reversed and remanded with directions.

HOFFMAN and SOUTH, JJ., concur.