# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Nash*, **2012 IL App (1st) 093233**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CORREAIL NASH, Defendant-Appellant. |
| District & No. | First District, Fourth Division <br> Docket No. 1-09-3233 |
| Rule 23 Order filed <br> Rule 23 Order withdrawn <br> Opinion filed | March 29, 2012 <br><br> May 7, 2012 <br> May 10, 2012 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court affirmed defendant's conviction for first degree murder based on the death of his cofelon, who was shot by their victim as the two were escaping from their commission of attempted aggravated vehicular hijacking, since the modified felony murder instruction communicated to the jury that the State had to prove the cofelon's death was proximately caused by defendant's conduct, the "use of force in self-defense" instruction did not create an erroneous inference that self-defense was an issue, the trial court did not abuse its discretion in referring the jury to the tendered instructions in responding to its questions, the trial court's adequate response to the questions precluded any consideration of whether defense counsel was ineffective in failing to object to the response, and the evidence was sufficient to establish defendant's guilt beyond a reasonable doubt, but the mittimus was corrected to reflect the proper credit for defendant's presentence incarceration. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-CR-18831; the Hon. Thomas V. Gainer, Judge, presiding. |

| Judgment | Affirmed; mittimus corrected. |
|---|---|
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Brian Carroll, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Matthew Connors, and Carol L. Gaines, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE STERBA delivered the judgment of the court, with opinion. Justices Fitzgerald Smith and Pucinski concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant Correail Nash appeals his conviction following a jury trial of first degree murder based on his commission of the felony attempted aggravated vehicular hijacking. On appeal, defendant contends that the modified felony murder instruction tendered to the jury removed from the jury's deliberation whether defendant's cofelon's death was a foreseeable and direct consequence of the attempted aggravated vehicular hijacking. Defendant also claims that the trial court erred in tendering the jury instructions addressing self-defense since that was not an issue in the case. Defendant further claims that the trial court erred in its response to the jury's question because its answer was nonresponsive. Additionally, defendant contends that the State did not prove him guilty beyond a reasonable doubt of first degree felony murder. Lastly, defendant claims that the mittimus must be corrected because it does not reflect the correct number of days of presentencing credit. For the reasons that follow, we affirm the judgment of the trial court and order correction of the mittimus to reflect 1,213 days of presentencing credit.

¶ 2                                    BACKGROUND

¶ 3    On July 16, 2006, the State charged defendant with the following offenses: (1) first degree murder of Qamont Parr; (2) attempted aggravated vehicular hijacking; and (3) unlawful use of a weapon by a felon. The case proceeded to a jury trial.

¶ 4    At the conclusion of opening statements, the trial court asked defendant to approach the bench because it wanted to have a conversation with him. The trial court asked defendant if he understood that his counsel, during opening statements, almost admitted that he was out on July 16, 2006 to hijack a vehicle. Defendant stated that he understood his counsel's remarks, that he discussed the remarks with counsel ahead of time and that counsel made the

remarks with his permission. The State then called its first witness.

¶ 5   Darren Crowder testified that he is a Chicago police officer assigned to the tactical team of the 7th District of the Chicago police department. At approximately 3:20 a.m. on July 16, 2006, Crowder, who was not on duty, was backing his vehicle into the carport located behind his house after returning from J&J's Fish Market. On that day, Crowder drove a silver 2005 Dodge Magnum XXT. It had 22-inch Feroni chrome rims, which had a retail value of approximately $2,500. As Crowder backed his vehicle into the carport, he saw a green minivan that he did not recognize as belonging to a neighbor drive slowly past his carport and he saw the driver look in his direction and then face forward. Crowder saw red brake lights illuminate on a garage just to the north of his carport. At that time, Crowder reached to grab his service weapon along with his food. Approximately three seconds later, Crowder saw a man, who was later identified as Qamont Parr, walk around the garage that had the red brake lights illuminated on it. Parr approached the driver's side of Crowder's vehicle and pointed a black handgun at him. When that occurred, Crowder was seated in the driver's seat of his vehicle with the door partially open, which he then kicked, hitting Parr and causing him to fall to the ground. Crowder announced that he was a police officer, and Parr fled. Crowder could not see Parr so he proceeded to look for him. As he was looking for Parr, another man, who was later identified as defendant, began walking down the alley pointing a silver gun at Crowder, who heard the gun click. Defendant racked the gun three times, which means that the upper receiver was pulled back to either dislodge a round or put a round in the gun's firing chamber. After defendant racked the gun the last time, he pointed it at Crowder and he continued to run toward Crowder's vehicle. Crowder announced that he was a police officer and put his gun in the opening between the inside of the vehicle and the door. Defendant exclaimed "Oh, shit" and began to run. Crowder then saw Parr, who at that time was crawling on all fours to the alley and garage that he came from originally. Crowder exited his vehicle, ran to the middle of the alley and announced that he was a police officer and told them to stop. Parr and defendant were running parallel to each other and on opposite sides of the alley. Parr then turned in Crowder's direction and pointed a weapon in his direction. Crowder testified that because he feared for his life, he discharged his weapon twice in Parr's direction. Crowder then saw defendant turn and point the silver handgun in his direction. Crowder discharged his weapon over 10 times in defendant's direction. Crowder saw Parr run a little farther and then turn east into some bushes while defendant hobbled and continued to run south down the alley.

¶ 6   Crowder saw the green minivan turn eastbound onto 72nd Street from the end of the alley. Crowder ran through a gangway and came out onto Champlain Street to see if Parr was there. Not seeing anyone, Crowder ran back through the gangway toward the alley. Before walking farther down the alley, Crowder stopped at his vehicle to reload his weapon. He then walked down the alley shouting "Could you come out, police, come out, come out, come out, police." No one came out.

¶ 7   Crowder next called 911 stating that he is an off-duty police officer who was just involved in a shooting and some individuals tried to hijack his vehicle. After police officers and detectives arrived at the scene, Crowder spoke with them. A detective asked Crowder to escort him to the location where he saw Parr enter into the bushes. When they arrived near

the bushes, Crowder saw Parr lying on his back. Crowder told the detective "That is the guy that I [*sic*] first came around the car holding the black handgun at me."

¶ 8 During cross-examination, Crowder stated that he had been a police officer for six years when the incident occurred in July 2006. While at the police academy, Crowder received training on how to identify different types of guns. Crowder's service revolver was a semiautomatic Baretta that held 16 bullets. Crowder acknowledged that defendant never discharged a round, but he heard the click from defendant's weapon and he racked the gun three times. Crowder stated that he told the two Chicago police officers who responded to the scene that defendant pointed his weapon at him, pulled the trigger and racked it. After Crowder announced that he was a police officer, defendant said "Oh, shit" and attempted to shoot him. Defendant then ran south down the alley. Crowder walked into the alley and discharged his weapon at the men running down the alley after they turned and pointed their weapons in Crowder's direction, but Crowder did not hear any shots fired. Crowder discharged at least 10 bullets in Parr's and defendant's direction and later learned that he shot Parr twice. When asked whether he told the Chicago police department investigator that defendant attempted to fire a weapon at him, Crowder responded that he did tell people, including investigators, police officers and detectives, that defendant pulled the trigger, racked the weapon and pointed it at him.

¶ 9 Officer Zuniga testified that at approximately 3:30 a.m. on July 16, 2006, he was in plain clothes riding in an unmarked vehicle with his partner. He received an assignment to go to the 7100 block of South Champlain, and once he arrived, he was told that shots were fired by the police and the possible armed offender ran southbound. Officer Zuniga's assignment was to search every house and yard for the possible offender. He walked through a gangway and opened the door to a fence at the end of the gangway. After opening the door, he saw Parr approximately five feet away lying on the ground, partially under a vehicle, near the front passenger's side by the tire. As Officer Zuniga approached Parr, he saw blood on his T-shirt, so an ambulance was requested. When the ambulance arrived, Officer Zuniga placed Parr in custody and went with him to Christ Hospital.

¶ 10 Carl Brasic is a forensic investigator with the Chicago police department. Brasic testified that at approximately 3:50 a.m. on July 16, 2006, he received an assignment to process a scene at 7108 South Champlain. When Brasic first arrived at the scene, he spoke with the assigned detectives to determine what occurred. He then walked through the area and recovered seven fired cartridge cases belonging to a 9-millimeter caliber in the rear of 7107 to 7109 South Lawrence. He also recovered a bloodstained t-shirt in the rear of 7120 South Champlain near the front passenger tire of a 1995 Pontiac Grand Am. While at the scene, Brasic did not recover any weapons, but he recovered a loaded 9-millimeter Baretta from Crowder at the area two police station.

¶ 11 Officer Robert Cummings testified that he was on duty on July 16, 2006, and was assigned to conduct a weapon search in the area of the 7100 block of South Champlin. Officer Cummings located a dark-colored, four-door Pontiac Grand Am parked in a carport where Parr was previously located. Lying on his back, Officer Cummings felt under the vehicle's grill area and found a black semiautomatic gun. Officer Cummings set the gun on the ground and called the evidence technician to recover it.

-4-

¶ 12    Raymond Jaster is a forensic investigator with the Chicago police department. Jaster testified that he was on duty on July 16, 2006, and received an assignment to process the scene at 7108 South Champlain. Jaster and his partner recovered three expended shell casings in the alley at 7107 South Lawrence. Jaster's partner also recovered the black semiautomatic .40-caliber gun that was placed in front of the black 1995 Pontiac. The semiautomatic gun was unloaded and the magazine was empty. After arriving at the police station, Jaster and his partner took swabs of the weapon for DNA. From the swabs, Parr could not be excluded from having contributed to the male profile identified from the swabs of the weapon.

¶ 13    Rich Glenke is a detective with the Chicago police department. Glenke testified that on July 16, 2006, he worked in the violent crimes area of the police department and received an assignment to assist in a shooting at 71st and Champlain. At approximately 6 a.m., he received another assignment to go to St. Bernard Hospital and meet with defendant. Defendant told Glenke that he was standing on the corner at 60th and Indiana when a black vehicle approached. Individuals in the vehicle asked defendant if they could buy some weed from him, and then they just began shooting. Glenke left defendant's hospital room, but later returned with Detective Ford and Detective Weber. Detective Ford read defendant his *Miranda* rights. The detectives told defendant that he lied about how he was shot. The detectives told defendant that an individual got shot at 71st and Champlain and that defendant was trying to rob a Chicago police officer. Defendant said yes, he was in a van earlier that evening with Parr and a person named J.T., and they saw Crowder at J&J's Fish Market. Parr liked the rims on Crowder's vehicle and said "let's jack dude." Glenke asked defendant what "jack dude" meant, and he responded that it means "let's rob him–let's take the rims from the Chicago police officer." Defendant stated that he gave Parr the following response: "yeah, and that car has a hemi." Defendant then told Glenke that they decided to follow Crowder to his alley on 71st and Champlain. According to the defendant, they followed Crowder in a van and passed him as he parked his vehicle. The van's driver stopped the van just past the officer's house. After the van stopped, defendant told Glenke that he and Parr exited the vehicle, and defendant noticed that Parr was holding a weapon in his hand. Parr and defendant went around a corner to "jack dude" when they heard Crowder yelling "Chicago Police, Chicago Police, I am the police." After hearing that, they took off running down the alley and shots were fired. Defendant ran to the end of the alley where the van was located, got in and told the driver to take him to the hospital because he had been shot. Defendant told Glenke that he knew Crowder was a Chicago police officer because he was shouting it as they approached him.

¶ 14    Aimee Stevens is a forensic scientist specializing in firearms identification and related examinations for the Illinois Department of Forensic Services Center in Chicago. The trial court found Stevens to be an expert in the area of firearms identification. From the 10 cartridge cases that she tested, Stevens concluded that they were fired from the 9-millimeter Baretta firearm. Stevens also examined the recovered black .40-caliber semiautomatic weapon and concluded that there were no unfired cartridges in the weapon's magazine or with the weapon.

¶ 15    During closing arguments, the State indicated that to sustain the charge of first degree

murder, the jury "must find from the evidence beyond a reasonable doubt that the defendant or one for whose conduct he's legally responsible for, Qamont, Jerome, combined to do an unlawful act, such as commit attempted aggravated vehicular hijacking, and that the deceased was killed as a foreseeable consequence of the parties committing that unlawful act." The State continued by stating that it is very foreseeable for victims to fight back, which is what Crowder did when he was being "carjacked," and that "a person who has not initially, not initially provoked the use of force against him, has no duty to attempt to escape the danger before using force against the aggressor." The defense stated that "all of the physical evidence shows you that the aggressor at the time that Qamont Parr was killed is Darren Crowder." The defense continued by stating that once the danger was over, Crowder "didn't stop there. He continued until Qamont Parr was dead and until Correail Nash was shot twice. Without one of them firing a weapon in his direction. As they ran down the alley trying to save their own lives. That's what the evidence in this case shows you. And that's truly undisputed."

¶ 16    Of the jury instructions offered by the State, defendant objected to the modified version of Illinois Pattern Jury Instructions, Criminal, No. 7.02 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 7.02) for felony murder, arguing that the instruction reduced the State's burden to show only attempt to commit aggravated vehicular hijacking and not that Parr's death resulted from the chain of events set in motion by the commission of that felony. The defense also objected to the State's offered Illinois Pattern Jury Instructions, Criminal, No. 24-25.06 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 24-25.06) addressing the use of force because this was not a self-defense case. Defense counsel preferred the State's offered instruction of IPI Criminal 4th No. 24-25.06 over Illinois Pattern Jury Instructions, Criminal, No. 24-25.09X (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 24-25.09X), which provides that a noninitial aggressor has no duty to attempt to escape danger before using force against the aggressor. The trial court tendered modified IPI Criminal 4th No. 7.02, IPI Criminal 4th No. 24-25.06 and IPI Criminal 4th No. 24-25.09X over defendant's objection.

¶ 17    During jury deliberations, the jury sent two notes to the judge asking two questions. The trial court read the questions in defendant's and counsel's presence. The first question asked the following: "Can we charge a lesser crime than first degree murder?" The parties agreed with the trial court's response, which was the following: "[Y]ou have all the evidence and the instructions on the law, please continue to deliberate." The second question, written on the self-defense instruction, asked the following: "Can this be considered as part of the charge consideration for first degree murder?" The trial court indicated to the parties that it did not understand the jury's question. The trial court offered the following response, which the parties did not object to: "The law that applies to this case is stated in the instructions which have been given to you. It is your duty to follow all of them."

¶ 18    At the end of deliberations, the jury found defendant guilty of attempted aggravated vehicular hijacking and first degree murder. The jury found defendant not guilty of unlawful use of a weapon by a felon. On November 9, 2009, defendant filed a motion for a new trial, which the trial court denied. On November 11, 2009, the trial court sentenced defendant to 32 years' imprisonment, with credit for 1,192 days spent in presentencing custody. On November 10, 2009, defendant filed a motion to reconsider the sentence, arguing that the

sentence was excessive in light of his background and the nature of the offense. The trial court denied the motion to reconsider. Defendant timely filed this appeal.

¶ 19                                        ANALYSIS

¶ 20                                  A. Jury Instructions

¶ 21     Defendant contends that the trial court erred in tendering to the jury the modified felony murder instruction because based on the instruction, the jurors were charged with the responsibility of determining only whether defendant committed the attempted aggravated vehicular hijacking and not whether Parr's death was a foreseeable and direct consequence of the felony. Defendant claims that the instruction failed to clearly communicate to the jury that the State was required to prove that Parr's death was proximately caused by defendant's criminal conduct to find him guilty of felony murder beyond a reasonable doubt.

¶ 22     Defendant offered the following felony murder instruction:

"To sustain the charge of first degree murder, the State must prove the following propositions:

*First Proposition*: That Darren [Crowder] caused the death of Qamont Parr; and

*Second Proposition*: That when Darren [Crowder] caused the death of Qamont Parr, the defendant was attempting to commit the offense of aggravated vehicular hijacking; and

*Third Proposition*: That Darren [Crowder's] conduct causing the death of Qamont Parr was a direct and foreseeable consequence of the chain of events set into motion by the defendant's commission of the offense of attempt to commit aggravated vehicular hijacking.

If you find from your consideration of all the evidence that each one of these propositions has been proven beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

¶ 23     Over defendant's objection, the trial court tendered the State's offered modified IPI Criminal 4th No. 7.02, entitled "Issues in First Degree Murder." The instruction states the following:

"To sustain the charge of first degree murder, the State must prove the following propositions:

*First*: That the defendant, or one for whose conduct he is legally responsible, performed the acts which ultimately resulted in the death of Qamont Parr; and

*Second*: That when the defendant, or one for whose conduct he is legally responsible, did so he was committing the offense of attempt aggravated vehicular hijacking.

The word 'acts' referred to in the statement 'performed the acts which ultimately resulted in the death' refers to the attempt aggravated vehicular hijacking.

-7-

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

¶ 24 Defendant objected to this instruction, claiming that the first proposition assumes that Parr's death was legally caused by the attempted aggravated vehicular hijacking and removed from the jury's deliberation whether Crowder shooting Parr was a direct and foreseeable consequence of the attempted aggravated vehicular hijacking.

¶ 25 In addition to the modified felony murder instruction, the trial court tendered to the jury the following modified Illinois Pattern Jury Instructions, Criminal, No. 5.03A (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 5.03A) entitled "Felony Murder Accountability":

"To sustain the charge of first degree murder, it is not necessary for the State to show that it was or may have been the original intent of the defendant that the deceased, Qamont Parr, be killed.

It is sufficient if you find from the evidence beyond a reasonable doubt that the defendant, or one for whose conduct he is legally responsible combined to do an unlawful act, such as to commit attempt aggravated vehicular hijacking, and that the deceased was killed as a foreseeable consequence of the parties committing the unlawful act."

The trial court also tendered to the jury Illinois Pattern Jury Instructions, Criminal, No. 7.15A (4th ed. Supp. 2011) (hereinafter, IPI Criminal 4th No. 7.15A (Supp. 2011)) instruction entitled "Causation in Felony Murder Cases." The instruction states the following:

"A person commits the offense of first degree murder when he commits the offense of attempt aggravated vehicular hijacking, and the death of an individual results as a direct and foreseeable consequence of a chain of events set into motion by his commission of the offense of attempt to commit aggravated vehicular hijacking.

It is immaterial whether the killing is intentional or accidental or committed by a confederate without the connivance of the defendant or by a third person trying to prevent the commission of the offense of attempt to commit aggravated vehicular hijacking." IPI Criminal 4th No. 7.15A (Supp. 2011).

¶ 26 The purpose underlying jury instructions is to communicate to the jury the correct principles of law relating to the evidence presented to enable it to reach a correct conclusion regarding the defendant's guilt or innocence based on the law and evidence. *People v. Ramey*, 151 Ill. 2d 498, 535 (1992). A trial court may exercise its discretion and tender to the jury non-pattern instructions "if they are accurate, simple, brief, impartial, nonargumentative statements of the law." *Id.* at 536 (citing Ill. S. Ct. R. 451(a) (eff. July 1, 1997)). The adequacy of tendered jury instructions should not be determined in isolation, but "should be examined in light of the overall charge." *Id.* at 537. This court will not disturb the trial court's tendered jury instructions absent an abuse of discretion. *People v. Polk*, 407 Ill. App. 3d 80, 107 (2010). A trial court abuses its discretion only "where no reasonable person would

-8-

take the view adopted by the trial court." *People v. Hall*, 195 Ill. 2d 1, 20 (2000).

¶ 27　　Illinois adopts the "proximate cause theory" of felony murder, which provides that "liability attaches under the felony-murder rule for any death proximately resulting from the unlawful activity–notwithstanding the fact that the killing was by one resisting the crime." *People v. Lowery*, 178 Ill. 2d 462, 469 (1997); see also *People v. Hudson*, 222 Ill. 2d 392, 401 (2006). Foreseeability is an essential consideration in a proximate cause analysis, but explicitly mentioning the term "foreseeability" in a jury instruction is not necessary to convey the concept of "proximate" to a jury. *Hudson*, 222 Ill. 2d at 401.

¶ 28　　In disposing of defendant's contention regarding the inaccuracy of the jury instructions, we must consider the instructions as a whole and not in isolation to determine whether they fully and fairly state the law. *People v. Martinez*, 342 Ill. App. 3d 849, 858 (2003). In the case *sub judice*, the instructions as a whole accurately conveyed the law to the jury. The jury received instructions regarding the elements of felony murder, accountability in felony murder and causation in felony murder. Collectively these instructions informed the jury what the State must prove to find defendant guilty of the charged offense. Both the accountability and causation instructions require a showing "that the deceased was killed as a foreseeable consequence" of either the parties committing the unlawful act or the "chain of events set into motion." Reading the three instructions in conjunction with each other, the jury was instructed that defendant, or one for whose conduct he is legally responsible, committed an unlawful act and the death of an individual resulted as a direct and foreseeable consequence of the parties committing the unlawful act. Thus, the jury was instructed regarding the theory of proximate cause.

¶ 29　　This court's decision in *Martinez*, 342 Ill. App. 3d at 858, is instructive. In that case, the defendant's cofelon was shot and killed by the intended victim of a home invasion and/or residential burglary. *Id.* at 852. The trial court in *Martinez* tendered to the jury modified jury instructions regarding felony murder and accountability reflective of the instructions tendered in the instant case. *Id.* at 857. This court in *Martinez* held that the accountability instruction clearly communicated to the jury that "the death had to be a foreseeable consequence of defendant or Medrano committing the home invasion and/or residential burglary." *Id.* at 858. This court also stated that the term "act" used in the elements instruction referred to the home invasion and residential burglary. *Id.* The *Martinez* court concluded that the "instructions as a whole correctly set forth the law of felony murder." *Id.* Here, too, the instructions taken as a whole sufficiently stated the law of proximate cause to allow the jury to reach a lawful conclusion regarding defendant's guilt or innocence. See *Hudson*, 222 Ill. 2d at 403. We disagree with defendant that defining the term "act" in the elements instruction as attempted aggravated vehicular hijacking removed from the jury's consideration the element of proximate cause because the accountability and causation instructions clearly articulated this concept to the jury for its deliberation.

¶ 30　　The Illinois Supreme Court's decision in *Hudson*, 222 Ill. 2d at 406, is also instructive. In *Hudson*, the defendant's cofelon was shot and killed by an off-duty police officer who was a patron of a barbershop that the defendant and his cofelon attempted to rob while armed. *Id.* The causation instruction tendered to the jury in *Hudson* mirrored the instruction tendered in the instant case. The instruction tendered in the case *sub judice* stated "the death of an

individual results as a direct and foreseeable consequence of a chain of events set into motion by his commission of the offense of attempt to commit aggravated vehicular hijacking" whereas in *Hudson*, the instruction stated that defendant "sets in motion a chain of events which cause the death of an individual." (Internal quotation marks omitted.) *Id.* at 397. Absent from the *Hudson* instruction are the words "direct and foreseeable consequence," but these words are included in the instruction tendered to the jury in the case at bar. See *id.* In concluding that the trial court did not abuse its discretion in the instructions that it tendered to the jury, the *Hudson* court set forth an example of a proximate cause instruction in an effort to aid the bench and bar in future cases. *Id.* at 408. The proximate cause instruction tendered to the jury in the instant case is a verbatim recitation of the example instruction provided by the court in *Hudson*. The supreme court stated that the instruction that it offered as an example "would have simply and concisely stated the law on proximate cause." *Id.* Accordingly, we conclude that the instruction tendered to the jury here adequately and clearly stated the law of proximate cause to allow the jury to reach a lawful conclusion regarding defendant's guilt or innocence. The instructions, taken as a whole, correctly set forth the law of felony murder and no error resulted from the instructions tendered to the jury.

¶ 31 Defendant also raises a claim of error relating to the trial court tendering the use of force in self-defense instruction to the jury because self-defense was not an issue in the case. Defendant contends that the trial court erred in tendering the following two instructions offered by the State regarding the use of force:

(1) IPI Criminal 4th No. 24-25.06, entitled "Use of Force in Defense of a Person":

"A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of lawful force.

However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent the commission of attempt aggravated vehicular hijacking."

(2) IPI Criminal 4th No. 24-25.09X, entitled "Non-Initial Aggressor–No Duty to Retreat":

"A person who has not initially provoked the use of force against himself has no duty to attempt to escape the danger before using force against the aggressor."

Defendant maintains that these instructions confused and misled the jury by creating an erroneous inference that self-defense was an issue at trial and a factor to consider in determining defendant's guilt. We disagree.

¶ 32 We note that during the jury instructions conference, the trial court stated the following:

"On the issue of People's instruction No. 25 and 26, I have reviewed the cases, I have looked at the IPI. In this case, the examination of Darren Crowder and the other circumstantial evidence would suggest that I believe the parties will appropriately argue that Darren Crowder was not justified in doing what he did, and since he wasn't so justified, the death of Qamont Parr can't be used–the act should not be, these men should not be accountable and responsible for his death, since Crowder was acting inappropriately at a time when both Nash and Parr had ceased and desist from the

-10-

commission of the offense of attempt aggravated vehicular hijacking.

> I have looked at the cases that are cited in the IPI. And I have considered the nature of the evidence here and the arguments of counsel. I find that it is appropriate to give 24-25.06. So it is given over objection, although I believe there was some statement by at least Miss Thompson, I don't know if Mr. Okitipi joined in, to the effect that if I was going to give 25 or 26, Miss Thompson indicated she preferred 25. But I will still take that as an objection to either one.

> Finally on the issue of 26, I believe there's sufficient evidence in the record to suggest that and I believe it will be argued that Crowder should have run to the safety of his home rather than in the alley to apprehend these people. So I believe it's appropriate to give also 26."

As indicated above, the experienced trial judge anticipated that the defense would argue that Crowder's actions exceeded what was reasonable in light of the circumstances. The trial court's belief came to fruition when defense stated, in part, during closing arguments that "all of the physical evidence shows you that the aggressor at the time that Qamont Parr was killed is Darren Crowder." Defense counsel also stated that "once the danger was over, [Crowder] didn't stop there. He continued until Qamont Parr was dead and until Correail Nash was shot twice." The instant case was not merely a first degree murder case, but it was a felony murder case. As such, an inherent risk of juror confusion existed because in the sequence of events that transpired in the alley, a felon was shot by the intended victim, and defendant, who did not shoot and kill his cofelon, was charged with his cofelon's death under the legal theory of proximate cause. To ensure the jury fully comprehended how defendant may be liable for Parr's death when he did not directly shoot Parr, the trial court did not abuse its discretion in instructing the jury that Crowder had a right to use force to protect himself when confronted with the imminent use of force. Thus, tendering the use of force instructions explained to the jury why Crowder was not liable for Parr's death even though he was the individual who actually shot Parr.

¶ 33    Moreover, the fact that Parr and defendant were no longer attempting to hijack Crowder's vehicle or that they were unsuccessful in doing so is irrelevant because when Crowder discharged his weapon, they were escaping from the scene of their attempted aggravated vehicular hijacking. Liability under a felony murder theory is still applicable even though the felons were attempting an escape when the intended victim used force against them. See *People v. Klebanowski*, 221 Ill. 2d 538, 542 (2006). In *Klebanowski*, 221 Ill. 2d at 542, a cofelon was killed by a Chicago police officer who fired shots at the deceased as he attempted to escape after he took the officer's wallet while pointing a gun at him. Our supreme court held that "[a] killing that occurs during the course of an escape from a forcible felony is within the operation of the felony-murder rule." *Id.* at 549. Here, Crowder used force in response to the attempted aggravated vehicular hijacking effectuated upon him by Parr and defendant, who were armed and who continued to flee despite Crowder announcing his office and requesting that they halt. In light of the facts of this case and the arguments made during the proceedings, the trial court did not abuse its discretion in instructing the jury regarding Crowder's use of force. Because we conclude no error occurred regarding the trial court's tendering of the instructions to the jury, we need not address defendant's contention

the alleged jury instruction errors were not harmless beyond a reasonable doubt. The preliminary step in a harmless error analysis is to determine whether an error occurred because there can be no harmless error without an error. *People v. Dennis*, 181 Ill. 2d 87, 95 (1998). Here, there was no error and, accordingly, we need not engage in a harmless error analysis.

¶ 34                                    B. Jury Question

¶ 35     Next, defendant contends that the trial court erred in its response to the jury's question during deliberation because it did not seek further clarification regarding the question that it did not understand and it did not answer the jury's question when it merely referred the jury to the instructions it previously received to determine defendant's guilt or innocence. Defendant contends that the jury's question revealed that the jury was confused by the use of force instructions. Defendant concedes that this claim of error is not preserved for our review. Nonetheless, he contends that we should review his contention employing a plain error analysis.

¶ 36     This court may review an unpreserved error if: (1) "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). Before we engage in a plain error analysis, the preliminary determination of whether an error occurred at all must be made because a plain error analysis requires the existence of an error. *Id.* Thus, we must first determine if the trial court erred in how it responded to the jury's questions.

¶ 37     The record reveals the following regarding the trial court's response to the notes that the jury sent:

"THE COURT: Mr. Nash is back before the court. All the lawyers are present. At 2:47, our deputy supreme, deputy Jagielski, the jury sent out a note, handwritten, without a signature.

'Can we charge a lesser crime than first degree murder.'

One minute later, 2:48 p.m., the jury sent out a second note. This note is written on a piece of paper that is a jury instruction. And the instruction it's written on is a person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force. However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes such force is necessary to prevent the commission of attempt aggravated vehicular hijacking.

Okay. So here's the question.

'Can this be considered as part of the charge consideration for first degree murder?'

I don't understand what it means. As to the first note, I propose writing a response

-12-

that says you have all the evidence and the instructions on the law, please continue to deliberate.

Any objection, Miss Thompson [defense attorney]?

MS. THOMPSON: No your Honor.

MS. CHAMBERLAIN [Assistant State's Attorney]: No.

THE COURT: Okay. Now as to the second question, I really don't understand what it means. Can this be considered as part of the charge consideration for first degree murder. I think I'm going to say to them it is–the law that applies to this case is stated in the instructions. Which have been given to you. It is your duty to follow all of them.

MS. THOMPSON: I think that's right, judge.

MS. CHAMBERLAIN: I think that's a correct response.

THE COURT: That's frankly right from the IPI. So once again to recap. Again the record should reflect that Mr. Nash is here. On the first letter, note that came out at 2:47 p.m., I written you have all the evidence and instructions on the law, please continue to deliberate. I signed my name.

On the second question, I [have] written the law that applies to this case is stated in the instructions which you have been given. It is your duty to follow all of them and again I have signed my name. Putting them both at 3:22."

¶ 38    Defendant raises a claim of error regarding the jury's second question. Defendant contends that the jury's question revealed that it was confused regarding the interrelationship between the use of deadly force in self-defense and the elements of felony murder, and that the trial court's response failed to resolve the confusion. Defendant claims that the trial court's error is magnified because the instructions tendered to the jury failed to present the applicable law in a clear and understandable way.

¶ 39    Generally, the trial court has "a duty to provide instruction to the jury where it has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion." *People v. Childs*, 159 Ill. 2d 217, 228-29 (1994). The trial court, however, has the discretion to "decline to answer a jury's inquiries where the instructions are readily understandable and sufficiently explain the relevant law, where further instructions would serve no useful purpose or would potentially mislead the jury, when the jury's inquiry involves a question of fact, or if the giving of an answer would cause the court to express an opinion which would likely direct a verdict one way or another." *Id.* at 228. The trial court's decision in how to respond to jury questions during deliberations is "ordinarily left to the discretion of the trial court, so that the trial court's decision will be disturbed on appeal only if that decision constituted an abuse of discretion." *People v. Falls*, 387 Ill. App. 3d 533, 537 (2008). The trial court should resolve explicit jury questions with specificity and accuracy. *Childs*, 159 Ill. 2d at 229. The trial court is also under an obligation to seek clarification of unclear jury questions. *Id.* A prejudicial error results if the trial court fails to answer the jury's question. *Id.*

¶ 40    Defendant relies on *People v. Childs*, 159 Ill. 2d 217, 234 (1994), but that case is distinguishable. The jury in *Childs* asked the following question: " 'Can the defendant be

guilty of armed robbery and voluntary or involuntary manslaughter or must murder be the only option with armed robbery?' " *Id.* at 225. Even though the trial court did not fully understand the jury's question, it made no effort to seek clarification of the question. *Id.* at 232. Instead, the trial court provided the following response: " 'You have received your instructions as to the law, read them and continue to deliberate.' " *Id.* at 225. The jury received felony murder instructions, but no verdict forms were submitted for felony murder. *Id.* at 229-30. In *Childs*, the supreme court stated that the trial court engaged in *ex parte* communication with the jury because defendant was not present when the trial court responded to the question, and its answer was tantamount to no answer because it failed to provide the jury with any guidance for resolving the problem that prompted the question. *Id.* Specifically, the *Childs* court concluded that the trial court failed to clarify the jury's explicit question about whether convicting defendant of armed robbery would also require convicting defendant of murder, and such question demonstrated the jury's confusion on a substantive legal issue. *Id.* at 229. Unlike the facts presented in *Childs*, defendant and his counsel were present in court when the trial court read the jury's question. The trial court also sought defense counsel's feedback on its intended response to which counsel not only did not object, but affirmatively stated that she agreed with the trial court's response. Moreover, the jury received instructions regarding the elements of felony murder, which included the concept of proximate cause, and what the State was required to prove to convict defendant. The use of force instruction was not part of the first degree murder, accountability or causation instructions tendered to the jury, but separate instructions. Thus, referring the jury to the instructions tendered was not an abuse of discretion because the instructions were readily understandable and sufficiently explained the relevant law. Also, unlike the question posed in *Childs*, the jury did not explicitly ask a question demonstrating confusion of the relevant substantive law of the case.

¶ 41    Defendant also relies on *People v. Falls*, 387 Ill. App. 3d 533, 538 (2008), which is distinguishable. In *Falls*, the jury tendered a question to the trial court inquiring whether physical resistance was necessary to constitute resisting a peace officer. *Id.* The trial court referred the jury to the instructions previously tendered. *Id.* The instructions, however, failed "to include what Illinois case law makes clear; that there can be no crime of resisting a peace officer unless the defendant engages in a physical act intended to interfere with that officer's exercise of his duties." *Id.* This court in *Falls* concluded that the trial court erred "when it refused to answer the jury's questions about a critical point of law not covered by the instruction which they were given." *Id.* Unlike in *Falls*, the instructions tendered to the jury in the case at bar were clear and accurately stated the applicable law concerning felony murder and the use of force by a nonaggressor. Thus, the trial court did not abuse its discretion when it referred the jury to the previously tendered instructions in responding to the jury's question since the instructions were complete and understandable. Because we concluded that the trial court did not err in its response to the jury's questions, we decline defendant's request to engage in a plain error analysis as no error exists for our review.

¶ 42    In the alternative, defendant contends that counsel provided ineffective assistance because she did not object to the trial court's unresponsive answer to the jury's question. As previously stated, the trial court's unresponsive answer to the jury's question was not

-14-

unresponsive and it appropriately referred the jury to the instructions tendered to it. Because the trial court did not provide an unresponsive answer to the jury regarding its question and adequately addressed the question, we need not address whether counsel provided ineffective assistance for failing to object to the trial court's response.

¶ 43                                    C. Reasonable Doubt

¶ 44        Next on appeal, defendant contends that he was not proved guilty beyond a reasonable doubt of felony murder. Defendant maintains that it was not foreseeable that Crowder would have shot Parr as he fled the scene, abandoning the attempted aggravated vehicular hijacking and threat upon Crowder. Defendant also maintains that it was not foreseeable that Crowder would have discharged the large number of bullets that he did, ultimately hitting Parr in the back leading to his death.

¶ 45        This court will not reverse a conviction based on insufficient evidence "unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of the defendant's guilt." (Internal quotation marks omitted.) *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011). When a defendant raises a sufficiency of the evidence claim, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *People v. Collins*, 214 Ill. 2d 206, 217 (2005). In reviewing the evidence, this court's function is not to retry the defendant or substitute our judgment for that of the trier of fact. *Id.*

¶ 46        To find a defendant guilty of felony murder, the "decedent's death [must have been] the direct and proximate result of the defendant's felony." *People v. Dekens*, 182 Ill. 2d 247, 252 (1998). When a defendant's actions create "a chain of events which were or should have been within his contemplation when the motion was initiated, he should be held responsible for any death which by direct and almost inevitable sequence results from the initial criminal act." *People v. Lowery*, 178 Ill. 2d 462, 467 (1997). It is irrelevant whether the defendant "did not anticipate the precise sequence of events that followed" his initial unlawful conduct; if his "acts precipitated those events, *** he is responsible for the consequences." *Id.* at 470.

¶ 47        Here, there was evidence, when viewed in the light most favorable to the prosecution, supporting the trier of fact's finding that defendant was guilty of felony murder. Enticed by the Feroni chrome rims on Crowder's vehicle that Parr and defendant spotted at J&J's Fish Market, Parr and defendant agreed to "jack dude." To carry out the robbery, they decided to follow Crowder, which ultimately led them to the alley behind Crowder's home. The minivan transporting Parr and defendant stopped just past Crowder's home, and the men exited the minivan. Defendant knew that Parr exited the minivan holding a weapon in his hand, and Parr first approached Crowder holding a black handgun. Defendant then approached Crowder pointing a silver gun at him. Crowder heard defendant rack his gun three times, and after the last time, defendant pointed the gun at him. Crowder announced that he was a Chicago police officer, and defendant then began to run down the alley, joined by Parr. As they ran down the alley, Parr turned and pointed a gun at Crowder. In response, Crowder discharged his weapon approximately 10 times in Parr's and defendant's direction.

Searching for a weapon, Officer Cummings found a gun in the grill area of the vehicle where Parr was discovered lying after he ran down the alley and Crowder discharged his weapon at him. The DNA on this recovered weapon could not exclude Parr as having possessed it. Aware that Parr possessed a gun when he approached Crowder to "jack dude," it was foreseeable that Crowder may use force and resist the attempted aggravated vehicular hijacking, as was the likelihood that an injury would ensue from the unlawful act.

¶ 48        Defendant further contends that he and Parr had already withdrawn from the commission of the attempted aggravated vehicular hijacking when Crowder discharged his weapon at them. Individuals committing a forcible felony are cognizant of the fact that they may encounter resistance from the intended victim during the commission of the felony and any subsequent escape. *Klebanowski*, 221 Ill. 2d at 555; *People v. Hickman*, 59 Ill. 2d 89, 94 (1974). The extent and means used by an intended victim to retaliate are irrelevant in determining the proximate cause element of felony murder. See *Klebanowski*, 221 Ill. 2d at 555 (stating that "[i]t is unimportant that defendant did not anticipate the precise sequence of events that followed the armed robbery"). The well-established law in Illinois provides that "a defendant may be held responsible for a death that occurs during an escape following the commission of a forcible felony." *Id.* at 546. In *Klebanowski*, the defendant argued that he should not be held accountable for felony murder because his cofelon was shot and killed after the predicate felony of armed robbery was completed. *Id.* The Illinois Supreme Court stated that the cofelon's death occurred as he effected his escape following the commission of a felony. *Id.* at 549. The court concluded that "[a] killing that occurs during the course of an escape from a forcible felony is within the operation of the felony-murder rule." *Id.* Accordingly, the court held that the defendant may be held liable for his cofelon's death. *Id.*

¶ 49        Although Parr and defendant were not successful in hijacking Crowder's vehicle, they nonetheless fled from the scene after their attempted aggravated vehicular hijacking. After Crowder announced that he was a police officer, the men continued to flee the scene and pointed a weapon in Crowder's direction, which then caused Crowder to discharge his weapon to resist the threat of harm that he faced. Defendant's and Parr's actions did not amount to a withdrawal of the commission of a crime nor had they reached a place of safety, which is evidenced by their continued flight down the alley. Crowder's retaliation by discharging his weapon in response to the attempted aggravated vehicular hijacking and in viewing a gun possessed by the men pointed in his direction as they attempted to escape was a direct and foreseeable consequence of actions undertaken by defendant in committing the attempted aggravated vehicular hijacking. Taking all of the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of felony murder beyond a reasonable doubt.

¶ 50                                    D. Mittimus

¶ 51        Lastly, defendant contends that his mittimus must be amended to reflect 1,213 days of credit and not 1,192 days credit as stated on the mittimus. The State concedes that the mittimus reflects an inaccurate number of days and that it should be corrected to reflect 1,213 days of credit. Here, the record reveals that defendant was taken into custody on July 16,

-16-

2006, and he remained in custody until he was sentenced on November 10, 2009. Therefore, defendant was in custody prior to sentencing for a total of 1,213 days, which includes the additional day for the 2008 leap year. Pursuant to our authority under Illinois Supreme Court Rule 615(b)(1) (eff. Jan. 1, 1967), we order the clerk of the trial court to correct the mittimus to reflect 1,213 days of credit, which is the correct number of days defendant spent in presentencing custody.

¶ 52                              CONCLUSION

¶ 53        For the reasons stated, we affirm the judgment of the trial court and correct the mittimus.

¶ 54        Affirmed; mittimus corrected.